<u>Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12:
Nad Case No 2013E000382</u>

**USDA, National Appeals Division
PO Box 68806
indianapolis, Indiana 46268-0806**

<u>Sunday, March 17, 2013</u>

<u>Statement on why we believe the agency determination is wrong.</u>

The Loan officer declined the Loan application on the basis of 7CFR 764.401(b)(2). **The proposed use of loan funds in not authorized for the type of loan requested. [Agency Record Page 2]**

**We disagree with the loan officer's decision and assert that the loan is for authorized purposes:**

1. **Loan officer states:** We "*have requested FO loan funds to pay living expenses via paying ones self for labor to allow loan installments to be made. This is NOT an allowed purpose(use) of loan funds*" **Loan officer cites 3-FLP(rev.2) AMEND. 1 Par. 131 A [7 CFR 764.151(a)]. FO loan funds may only be used to :Acquire or enlarge a farm or make a down payment on a farm. [Agency Record Page 7]** *-note- Under Farm Purchases-*


**In paragraph 1, First we believe that [7 CFR 764.151(a)] is applicable only when a request has been made to purchase farm land. Second we believe the loan officer has misapplied CFR 764.151. There are other provisions of FO loan fund uses and these can be evidenced by the following: [Agency Record Page 7]**

First by 3-FLP(rev.2) AMEND. 1 Par.131 A Page 7-1 states that valid uses are defined in subparagraphs B through F for FO uses. Therefore, there are other valid uses for FO funds besides [7 CFR 764.151(a)]. **[Agency Record Page 7]** Specifically, we would assert that our loan request is valid under 3-FLP(rev.2) AMEND. 4 Par.131 C Page 7-2 [ 7 CFR 764.151(b)]. **{Agency Record Page 8}** *- note  Under Capital Improvements-*

Second by assessment of the Federal Register 7 CFR 764.151(b) states: "

**Make capital improvements to a farm owned by the applicant**, for construction, purchase or improvement of farm dwellings, service buildings **or** other facilities and improvements essential to the farming operation. In the case of leased property, the applicant must have a lease to ensure use of the improvement over its useful life or to ensure that the applicant receives compensation for any remaining economic life upon termination of the lease;". **{Exhibit A Page 2}**

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

http://cfr.vlex.com/vid/764-farm-ownership-loan-uses-286341711

Third by the loan officers declination letter Par. 3 where he referenced 7 CFR 764.151(b), the existence of another valid uses for FO Funds besides [7 CFR 764.151(a)] which is contradictory to the wording in the second paragraph of the declination letter.
[**Agency Record page 2**]

1a.   Fourth:  by 3-FLP(rev.2) AMEND. 2 Page 3-10 Par 42(A) **[Exhibit B Page 1]**
\*--**Note:**  For all FLP loans involving construction, see 1-FLP, Part 5.--\*
**1-FLP(Rev.1)Amend 1 Par. 122 (C) Page 5-3. [Exhibit C Page 1]**

Construction and development work may be performed either by the contract method or the borrower method.  Under the contract method, construction and development contractors perform work according to a written contract with the applicant or borrower.

Under the borrower method, the applicant or borrower will perform the construction and development work.  The borrower method may only be used when the authorized agency official determines, based on information from the applicant, that both of the following conditions apply:

• The applicant possesses or arranges to obtain the necessary skill and managerial
  ability to complete the work satisfactorily

• Such work will not interfere with the applicant's farming operation or work schedule.

On Paragraph 3 of the declination letter, **loan officer asserts** we *"have requested FO loan funds to complete the construction of a large dwelling."*  and asserts that this is not allowed under 3-FLP(Rev. 2) Amend. 4 [7CFR 764.151(b) which states ***"FO loan funds may only be used to :Make capital improvements that are essential to the farming operation. --*** [**Agency Record Page 2**]

**In paragraph 2  We believe the loan officer has misapplied 3-FLP(Rev. 2) Amend. 4 [7CFR 764.151(b) by selectively paraphrasing the rule to support the decision he wanted to render.**

**2.** First the loan officer wrote "which states "FO loan funds may only be used to :Make capital improvements that are essential to the farming operation". **{Agency Record Page 2]** However, this statement is not consistent with the actual wording of 3-FLP(Rev. 2) Amend. 4 [7CFR 764.151(b) making his statement a material misrepresentation of fact. 3-FLP(Rev. 2) Amend. 4 [7CFR 764.151(b) actually states: {Agency Record  Page 8}**

"**Make capital improvements** to a farm owned by the applicant, for construction, purchase or improvement of farm dwellings, service buildings **or** other facilities and improvements **essential to the farming operation**.  In the case of leased property, the

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

applicant must have a lease to ensure use of the improvement over its useful life or to ensure that the applicant receives compensation for any remaining economic life upon termination of the lease;".

Secondly by assessment of the Federal Register 7 CFR 764.151(b) states:  SEE quote above in paragraph 6. **{Exhibit A Page 2}**
http://cfr.vlex.com/vid/764-farm-ownership-loan-uses-286341711

Third by the presence of **or** in the conjunctive clause.  One of the rules of statutory construction is to look for the signifiers "and" and "or".  This statement is filled with commas representing 'and' as well as the presence of 'and', but, also 'or'.  The definition of the word or is **alternative,** as defined by Webster's dictionary. **{Exhibit D Page 1}**
 http://www.merriam-webster.com/dictionary/or

Fourth by the letter sent to Mr. Rigney dated Nov, 6, 2012 and the attached schedule of expenditures.  Nowhere indicated in these documents, outlining the expenditures, was completion of the house requested nor was the payment of living expenses. **{Exhibit E Pages 1 - 3 } Additionally we have already established that FLP 1-FLP(Rev.1) Amend 1 Par. 122 (C) Page 5-3.  allows for the borrower method on construction projects.**

Fifth by audio recording of Mr Rigney's site visit in which he was told specifically that we did not intend on completing the house at this time. **{Exhibit F}**

Sixth by **7 CFR 764.151(b) of the Federal Register states FO Loan Funds can be used to "Make capital improvements to a farm owned by the applicant**, for construction, purchase or improvement of farm dwellings, service buildings or other facilities and improvements essential to the farming operation."  The presence of or 'alternatively' states there are potential uses for improvement of other facilities when deemed essential to the farming operation.  We specifically stated in our correspondence that the nature of these improvements would allow the structure (dwelling) to be safe from the elements going forward (essential to securing the dwelling).**[Exhibit E Page 1]**  We believe that construction, purchase or improvement of farm dwellings is not restricted by the clause "essential to the farming operation" due to the presence of the OR in the conjunction.  Additionally, this is evidenced by the existence of dwelling in the conjunctive clause.  Because a dwelling would never be essential to the operation of a farm consequently, an alternative interpretation makes no sense. **{Exhibit A Page 2}**


**In Paragraph 3 Sentence 2, we believe the loan officer has misapplied** 7-2, Para. 131 C, **selectively paraphrasing the rule to support the decision he wanted to render. {Agency Record Page 2}** And we would like noted that this is an FSA interpretation of the CFR and not what is actually stated in the CFR.

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

3.  Additionally, on Paragraph 3 of the declination letter the loan officer stated *"page 7-2, Para. 131 C, states that FO loan funds can be used to build a dwelling on the farm that adequately meets the family's needs and is modest in size, cost and design."* **However, this statement is not consistent with the actual wording on page 7-2,para.131 C,  making this statement a  material misrepresentation of fact. 7-2,para.131 C actually states:**

**"FO funds can be used to purchase, improve, or build any type of structure, including** a*--dwelling that *either* adequately meets family needs and is modest in size, cost, and design,provided the structure is related to the farming enterprise. The dwelling shall be located on the farm when FO funds are used to purchase the dwelling. However, if the applicant **--*already owns a dwelling located close to the farm, FO funds may be used to repair or improve the dwelling." {Agency Record Page 8}**

**7-2,para.131 c actually states:**  "FO funds can be used to purchase, improve, or build any type of structure, including " 'including which means to take in or comprise as a part of a whole or group', "a*--dwelling that *either* adequately meets family needs and is modest in size, cost, and design, provided the structure is related to the farming enterprise." According to Websters **{Exhibit G Page 1}**  http://www.thefreedictionary.com/including

**I**ncluding a*--dwelling that *either* adequately meets family needs and is modest in size, cost, and design,provided the structure is related to the farming enterprise.

This statement appears to imply applicability to purchases or construction of a **complete** dwelling not improvements to an existing dwelling. This is evidenced by the preceding sentence in the paragraph. "The dwelling shall be located on the farm when FO funds are used to purchase the dwelling" It is further evidenced by the last sentence in the paragraph which states " However, if the applicant already owns a dwelling located close to the farm, FO funds may be used to repair or improve the dwelling." **Which is not restricted by the requirement that the dwelling be modest in size cost and design.**

**The statement is additionally Incomprehensible as it implies with the word *either*  that there is an alternative and yet within the sentence no alternative is given. According to Webster's {Exhibit H Page 1}**

**How can a rule formed with an incomplete sentence and  expressing an alternative where none is given be appropriately applied?**

 http://www.merriam-webster.com/dictionary/either

Questions of the court.

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

1. Is it more likely or not such a rule should be applied where the rule had been broken prior to even beginning to farm, or to begin to meet eligibility requirements?
    a. Then Is it more likely than not that the rule in place at the time of design is applicable? **Note rule changed In October 2011**.
    b. Can a rule that is restrictive of a design(the point of putting conception to paper be applied retroactively or only prospectively?
2. Is it more likely or not that the rule is meant to be applied when the applicant did not request purchase or construction of a complete dwelling?
3. Is it more likely or not that the rule applies to improvements on an existing dwelling where design was completed 4 years and 3 months prior to the FO application.
    a. Why would improvements and repairs be allowed on a dwelling close to the farm without restriction if improvements are to be included in the restriction?
3. Can a reasonable assessment of the rule be made where the rule is incomprehensible?
    c. There is no or for the either in the rule statement.

We did not request FSA to allow us to build a house or purchase a dwelling. Evidenced by **{Exhibit E Pages 1-3 }.**

The house was and is already under construction and was designed prior to any consideration of obtaining a farm loan. **[Exhibit I Pages 1 & 2] [Exhibit J Pages 1,2,3]**

We first requested an application for a FO Loan in the fall of 2009 after seeing advertisement in local FSA office when reporting requested crop information. **[Exhibit K]** We determined then we were not eligible because of farming experience requirements.

The house is 60% +- complete by most methods of percentage of completion analysis. While we would concede the dwelling may not meet FSA's definition of modest in size, cost, and design, it should be no more subject to the requirement than is a dwelling located close to the farm as described on page 7-2, para 131 C. **{Agency record page 8}**

 Additionally, we believe that we did not request FSA to purchase a complete dwelling and therefore our requested improvements to what will eventually be our farm home should not be subjected to this requirement either. The dwelling when occupied will be just as important to the farming operation as any dwelling would be on a farm.

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

We have worked on bringing this farm back to life for 5 years and the house was designed prior to that.  Construction on the home has been underway for more than 3 years now.  The building was originally designed  to accommodate, if and when completed, not one but two families.  The design includes a basement that was cost effective on a hillside. We plan to first use the bottom half portion of the basement for our business to produce wine on a small scale while beginning our farm winery operation. To continue to use the basement as a packing, sorting, and storage for our apple business.  We anticipate that if we ever finish the basement to use the facilities as a weekend rental for our small business operations.

I have in the past built a home similar, and spent 11 years constructing it before total completion.  We lived in the house for 10 of those years.  We intend this time, to complete the room over the garage for living quarters while we work on the primary first floor residence and develop the vineyard and wine making operations. **[Exhibit L]**

**In paragraph 2, the loan officer has made assertions for his denial for which he has provided no citation.  Again, we believe he has  selectively chosen wording from the handbook  to support the decision he wanted to render. [Agency Record Page 2]**

**4**.  Additionally, on paragraph 3 of the declination letter, the loan officer stated, *"The improvements completed as you have proposed are not essential to the farming operation."*  We have not seen in the federal register nor was any reference made in the FSA handbook nor any reference cited to substantiate that capital improvements must be essential to the farming operation, to the contrary, we find that both **3-FLP (Rev. 2) Amend. 4 [7CFR 764.151(b)  and CFR 764.151(b) of the Federal Register and 7-2,para.131 c** allow for capital improvements. Furthermore, The proposed vineyard implementation is essential to making the operation profitable and the dwelling is as essential as any farm dwelling would be. Additionally, the dwelling improvements are essential to preventing the home from deteriorating and are tax advantaged ecologically and fire prevention minded improvements.

 We believe that the requested improvements are essential to the farming operation.  The loan request asked specifically to provide funds to complete framing, roofing, windows and doors, siding, and boxing.  These are essential to protecting the existing structure from deterioration and to provide a dwelling for us to subsequently live in on the farm.  Additionally, the premises will allow for the production of wine in the basement facility, and longer term potential rental income as we work toward a farm, winery, and accommodations rental business.  Again, this dwelling is as essential to our farming operation as any dwelling would be on any farm.  All of the other requested expenditures were for materials and labor to plant and irrigate a new vineyard for expansion of the farm's business operations.

   d. We asked to make improvements to a structure already in place.
      i.  That  is intended to be our primary farm dwelling.

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

      ii. That are necessary to protect the structure from deterioration.
         1. The proposed improvements to the structure were.
            a. Garage and porch framing.
            b. Windows and doors.
            c. Siding
            d. Boxing
            e. Roof
               i. Each and all of which could be improvements on any farm house
                  1. Each and all of which are environmentally friendly
                  2. Each of which is chosen for longevity and fire protection
                  3. Two of which had preferential treatment under the tax code. 30% tax credit.
                     a. The house is in a high wind remote rural area and has no near fire hydrant and has only distant volunteer fire stations.

    e. The goal is for the dwelling to ultimately play a role in our small business plans.

(In paragraph 3, the loan officer has made assertions for his denial for which he has provided no citation.  Again, we believe he has selectively chosen wording from the handbook to support the decision he wanted to render. [Agency Exhibit Page 2]

5. Additionally, on paragraph 3 of the declination letter, the loan officer stated,*"The Improvements exceed what is adequate to meet the family's needs as defined by FSA."* Again, we have not located in the FSA handbook or the Federal Register any reference made to substantiate that improvements to an existing structure be subjected to the requirement of the family's needs. To the contrary, we find that both **3-FLP(Rev. 2) Amend. 4 [7CFR 764.151(b)  and CFR 764.151(b) of the Federal Register and 7-2,para.131 c allow for capital improvements. (**see the full text quoted above).

No guidance is given in the handbook that we located as to how FSA would make such a determination.  True, in the handbook there is a clause stating that purchase or construction of a "dwelling that either adequately meets family needs and is modest in size, cost, and design, provided the structure is related to the farming enterprise." exists,

however; it is questionable and subjective to assert that improvements to the home we have already built is not essential to the farming operation as the home is on the farm and failure to complete it requires the family to have additional housing.  Or that it is more than adequate to meet the family or business needs.  It would cost more to construct a new home comparable to the national median home price than it would to entirely complete the existing structure which we did not request FSA to do.

Furthermore the requested improvements are important if not essential to protecting the structure in a remote location as well as the materials are recommended by the federal government by the very existence of tax incentives to employ them.

### Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382

 I would also add that this home was designed for the actual lot more than 5 years prior and at the time we had bank financing approval.  Subjecting us to a requirement that our house be modest in size and design is asking us to change a decision we made more than five years ago under very different circumstances.  It is the equivalent of requiring us to do the impossible.  How can the government discriminate against one citizen over the other based on criteria that are impossible to change?  You might as well say I'm intelligible because I'm white, black, or female.  It's just plain discrimination of a very small class. With our personal capital invested in the existing structure and land and currently maintaining a separate household in addition to 4 warehouses to store our belongings, completion of the existing structure is the only practical alternative.  I would like to add that this home has been constructed by myself and 2 field hands and that **the current structure and land are debt free.**

**In paragraph 4, the loan officer has misapplied 3-FLP (Rev. 2) Amend. 1 Par. 133C. The loan officer should have known by simple review of the schedule of liabilities, and the common practice of reviewing a credit report that we had no outstanding debt secured by real estate.  Additionally, we believe this was a further attempt by the loan officer to justify the decision he wanted to render. [Agency Record Page 2]**

**6.**   In paragraph 4, the declination letter asserts that we have "requested FO loan funds to make loan payments."  The declination letter cites 3-FLP (Rev. 2) Amend. 1 Par. 133 C Refinancing of real estate debt is prohibited.  **However, this statement is not consistent with the actual wording of 3-FLP(rev.2 amend. 1 par.133C , which states, "** Refinancing of real estate debt is prohibited except for bridge loans according to subparagraph 131 F."

This statement says refinancing of real estate debt is prohibited. This would only be consistent with the existence of a loan secured by real estate.  We did not on our application or in any of our communications or on our schedule list the paying off of any debts. We did not list on our schedule of liabilities any debt secured by real estate. **[Exhibit M page 2]** Additionally, we believe that if any outstanding real estate debt existed on our property it would be reflected on the credit report which FSA collected payment for when we submitted our application.  We expect FSA to document the real estate debt we are supposedly refinancing. As further evidence we submit **[Exhibit N Pages 1-5 excluding cover letter ] The credit report dated February 8th 2013 pulled by FSA inappropriately after denying our loan application. FSA was not asked to pull a current credit report but to provide a copy of the report used in making the declination decision [Exhibit O Page 1]**

3-FLP(Rev.2) amend 1 Par. 45A of the FSA handbook states: "upon receiving a loan application, the agency official shall bullet #5 obtain a credit report." **[Exhibit P Page 1]** *The loan officer failed to request a credit report prior to our loan declination but actually requested one between the time we received our declination letter and mediation.*

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

If you look at the schedule of expenditures we provided on request, you will note that the only items listed on that schedule are materials and labor for capital improvements. **{Agency Record Page 10}**

Which are valid uses of FO loan funds under **3-FLP(Rev. 2) Amend. 4 [7CFR 764.151(b) and CFR 764.151(b) of the Federal Register and 7-2,para.131 c.** Furthermore, we do not accept the premise that any of these capital improvements are subject to the requirements laid out in the handbook for the purchase or construction of a complete dwelling.

I have worked this farm and built the current house over the last 5 years. I have personally invested almost $600,000 in identifiable cost of my own capital into this project and community.  I have over $500,000 in capital assets on my books for this effort and that does not reflect compensating myself for any work over the last 5 years. So if you believe that my labor for 5 years is worth something the assets on my books are significantly understated.

 It seems as though FSA is suggesting that requesting funds for construction of a complete dwelling is more practical than making capital improvements to secure a structure already substantially complete. That it is acceptable to treat us with prejudicial treatment simply because we tried to build our dream house on a farm and attempt to make it into a viable operation without first getting their approval.

We believe we met all of the FLP FO loan eligibility requirements including the preferential treatment given to beginning farmers. That we requested an FO Loan on property we already owned for the singular purpose of making capital improvements. Eligible under CFR 764.151(b), that these capital improvements like all capital improvements require labor to complete the work. That labor cost on capital improvements are legitimate capital expenditures under GAAP  **[Exhibit Q Page 1]** and **[Exhibit R Page 1]**  and IRS rules **[Exhibit S Page 1 and 2]**. That based on the FLP rules work can be performed either by contractor or the borrower under 1-FLP, Part 5.**--*Par. 122 (C).**  That we are qualified to perform the work as evidenced by the progress made over the last five years as well as a multitude of personal experience. That the intent of much of the capital expenditures was to plant a vineyard to expand the current apple orchard business and to overtime become a profitable farm winery operation. Therefore, the statement: T**he proposed use of loan funds is not authorized for the type of loan requested,** *is false.*

The full text of the IRS vineyard winey audit guide can be found at: **http://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/The-Wine-Industry-Audit-Technique-Guide#_Toc291665607**

We believe that pulling our credit report, and providing it to us, as if we might not question the as of date being current, after the declination had already been rendered, was an attempt to hide the fact it was not originally referenced. That failure to simply admit they did not pull the credit report in question when asked a second time to

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

produce it, is further evidence of an attempt to deceive. We further assert that as a loan officer and a loan manager they should have been aware that pulling of credit reports without a current credit application or an offer of approved credit is prohibited. That pulling of our credit report after denying our application was an invasion of privacy and detrimental to our credit rating.  Additionally, as loan officers and managers, they should have the education and knowledge to know that any individual can pull their own current credit report without detriment to their credit rating.  Had we wanted a current report. we could have simply requested it without consequence.

We believe that this loan application was not given proper consideration. That in fact, it was given negligent and prejudicial treatment. That a credit report was not obtained upon completion of the loan documents because of a prejudicial bias and intention to deny the loan.  That the loan officer had inquired on his site visit  if we had experience as a loan officer because he intended to deny the loan the day we submitted the application. **[Exhibit T]**  We assert that not one phone call or any effort was ever made to discuss any aspect of our loan application or offer any information on other loan program eligibility nor any effort to contact us regarding our failed mediation request (which we believe was related to prejudice). We believe it was negligent of FSA to send us a letter offering us a mediation program that had lost certification a month prior to the date of the letter according to Wanda Johnson program coordinator.**[Agency record Page 3] [Exhibit U Page 1]** That FSA was negligent in not notifying us that their mediation program was defunct and providing us with an appropriate response. Furthermore we believe that FSA was negligent in the updating of their handbook as evidenced by the expression of an alternative in the rules when none is provided.

 We believe the rules of the FSA handbook and the code of the federal register appear intentionally manipulated in FSA's declination letter, effectively they have written their own rules to justify prejudicial treatment of this application. We further assert that the declination document additionally has multiple false and misleading statements.  We give you three specific examples of FSA writing their own laws **[Exhibit V page 1]**

We feel FSA has a certain bias in evaluating the proposed material and labor cost submitted. They do not seem to give any recognition to the fact that it takes labor and in many cases skilled labor to make these capital improvements. Additionally, they seem to be unaware that labor cost on capital improvements are capital expenditures including management cost and are to be capitalized based on GAAP and IRS rules. While we do not have cost estimates from third parties on all our purposed fund uses we would like to submit for evaluation several items which may be of interest in evaluating these cost. Please see **[Exhibit W].**

We are attempting to develop a farm winery operation in a location that we believe will help drive traffic to other local operations. However, we are aware that these operations may be seen as unwanted competition. Two of the larger local operations are in neighboring Floyd county. When we received our declination it was the first time we had ever heard of Mr. Kraszewski and we googled his name to see what information we might find on him. We were concerned by seeing his named attached to a residence in

**Christopher & Renee Julian vs FSA of Chatham Va. on FO Loan request 10/10/12: Nad Case No 2013E000382**

the very small community of Floyd. We continue to wonder if this may be playing a role in FSA's position. **[Exhibit X]**

To this we would add that in FSA's Agency Position FSA has asserted on page 5 of the Agency record we want to use FO funds for living expenses. Again this is a misleading statement we showed using funds to pay salaries for labor cost on capital improvements. Recognized under GAAP and IRS regulations as valid capital expenditures in the construction of assets and vineyards and occurring for 3 years of vineyard development. We had also indicated in our correspondence to FSA that we would likely spread initial planting over two years in our development plan.

It is very concerning to an accountant with 26 years of experience that FSA Loan officers do not understand basic accounting principles. That as an agency with a mission to help small farmers and businesses obtain commercial credit they do not understand accounting for capital improvements and fixed assets. That they do not recognize the importance for small business owners to account for paying themselves a living wage. That they believe that capital improvements can occur without labor cost. That in a state seeking to develop it's wine industry they do not understand the development cost on a vineyard and the proper treatment of the labor cost involved. That this same treatment is appropriate for peach and apple farming as well. That they believe they can submit altered regulations and laws as supporting documentation when in the public domain it would be a civil litigation matter.

Sincerely,


Chris & Renee Julian
Blue Ridge Springs Orchard
474 Orchard View Drive
Ararat, VA. 24053