Director Nationals Appeals Division
National Appeals Division
Eastern Regional Office
P.O. Box 68806
Indianapolis, Indiana 46268-0806

United States Department of Agriculture
Office of Inspector General
P.O.Box 23399
Washington, DC 20026-3399

Consumer Financial Protection Bureau
Post Office Box 4503
Iowa City, Iowa 52244

USDA Assistant Secretary for Civil Rights
Office of the Assistant Secretary for Civil Rights
1400 Independence Avenue, SW
Washington, DC 20250-9410

Monday, June 17 2013

Regarding NAD Case No: 2013E000382

Dear Sir or Madame,

    This letter serves several purposes.  First to specifically request a Director of
National Appeals Division review of case No: 2013E000382.  Second, to file complaints;
of misconduct, by FSA personnel and it's administration with the USDA Office of
Inspector General. Third to provide the Consumer Financial Protection Bureau with
accurate information on our loan application and not the false statements made by FSA
and forwarded to them by Chris P. Beyerhielm Deputy Administrator for the Farm Loan
program.  Fourth to file complaints of discrimination with the Office of Assistant
Secretary for civil rights.  Fifth for public record and transparency of government
agency activities.

First, it is a tenant of the English language that it be read left to right and top to bottom
for interpretation. The only single reason given to deny our application surviving validity
of interpretation by the hearing officer in our case, is that the means test for construction
or purchase of a farm dwelling is applicable to improvements to an existing dwelling.
This is not consistent with the statement preceding the means test in FSA's

interpretation of 7CFR 764.151(b) that says: "If the applicant already owns a dwelling located close to the farm FO funds may be used to repair or improve the dwelling." This statement precedes the means test discussion and is not restricted by the clause "either meets family needs and is modest in size cost and design".

The hearing officer has provided no explanation how he interprets this rule to disallow improvements to our dwelling. Except to say that the agency is entitled to substantial deference in interpretation of it's own regulation. Additionally, FSA offered no evidence written or otherwise to support the findings the hearing officer atoned.

The only way to interpret this rule to deny improvements to our farm dwelling, is a strict interpretation, where improvements to a farm dwelling, because it's on the farm would be excluded from using FO loan funds to make improvements or repairs. This would be in direct conflict with the preceding requirement that purchased or constructed dwellings be on the farm. It would also dictate the logic that a home on the farm and one close to the farm would be afforded different treatment. Mr Kraszewski did in fact after mediation, in a recorded conversation, inform us that there was no difference between on the farm and close to the farm. If you want to use a strict interpretation and hang on this thread, then we, also require the same deference. We asked in the pre-hearing which rendition of the rule was applicable and were informed it was the one in place between the time of the application and the declination. Under a strict interpretation; this rule is incomprehensible based on the rules of English grammar and therefore violates our rights to procedural due process. Furthermore, it is inappropriate of the hearing officer to accept FSA's interpretation of their own written interpretation as valid when the written interpretation cannot be interpreted as written. Regulations and laws are subject to being void for vagueness under due process and given the extent of the grammatical errors in this FSA interpretation of 7CFR 764.151(b) we believe it prudent for the actual law in the code of the federal register be applied. The law as written has absolutely no such stipulation on the use of funds for capital improvements to a farm owned by the applicant.

We would argue that the Agency in this case is not entitled to substantial deference in interpretation of it's own regulations for the following reasons:

We documented in our briefs, the agencies failure to follow their own procedures. Documentation to the hearing officer provided specific evidence of negligence, fraud and substantial deceit by FSA. Additionally, we provided substantial circumstantial evidence of prejudice and probable breach of FCRA regulations. Having now concluded the hearing, and having the hearing officers statement, that he found no evidence we ever requested living expenses; we are prepared to provide the full recorded context of our conversations with Mr Rigney and Mr. Kraszewski. These recordings demonstrate no such conversation regarding living expenses ever occurred and that therefore, Mr. Kraszewski's statement in the hearing that such conversations had occurred was factually perjury. These recordings based on our limited understanding of law were legal under the one party consent rule and or were provided by the pre-hearing or hearing recordings. This fact can be further evidenced by the

declination letter itself, which shows whomever, constructed the letter determined that a request, to be paid for labor on capital improvements was a request for living expenses. " you have requested FO loan funds to pay living expenses **via** paying ones self for labor".  Additionally, during the hearing Mr. Kraszewski and Mr. Rigney stated twice that our application would be reconsidered if we would just re-submit the application requesting labor rather than living expenses.  For us, this raises two serious issues. One we never requested living expenses to begin with, so why should we start this whole process over after all the damage that has already occurred?  It's stated that if we just change our request to be for labor, somehow, the issue with improvements to the house goes away?  This was not the first time we had heard these very statements.  We note for the record here that Mr. Kraszewski states in the hearing the loan was denied for living expenses.  Furthermore, what difference would it make to re-submit the application the same as it originally was submitted?

We state in no uncertain circumstances, that NAD and FSA have substantially denied us procedural due process in several ways.

In multiple documented instances we requested that NAD consider our argument that every line of the declination letter be introduced as evidence to support our burden of proof in this matter.  We specially cited Par. 96(b) 1-APP(rev2) amend 1 - "Relevant evidence means evidence that has any bearing on any fact that is of consequence to the case or decision."  The hearing officer denied our request for inclusion of discussion, the full context of the declination letter.  Furthermore, NAD is unwilling to allow discussion of torts, which we contend in this case denied us the presentation of evidence to support our burden of proof in this matter.  Given the negligent, prejudicial, false and misleading statements, as well as plane incompetence evident in the declination letter along with the fraudulent presentation of FSA rules and regulations, and fraudulent presentation of laws from the code of federal regulations.  The fact is, FSA was negligent, prejudicial, and biased while considering all aspects of our application and this should have been given considerable weight in assessing whether their interpretation of 7 CFR764.151(b) is entitled to any deference.  As it was likely given the same negligent, incompetent, and prejudicial, review as were the other dismissed lies and regulatory interpretations.  Especially, when the rules being applied are incomprehensible based on the rules of English grammar.  The entire FSA interpretation of paragraph 7 CFR764.151(b) is a despicable grammatical mess.  An inexcusable mess  for which FFSA, FSA, and the USDA should be held accountable.  It is grossly negligent that it was ever published in it's present form and that it went this long without being fixed.  Perhaps everyone who looks at it does so with prejudice.  An example may help - you can either have bacon with eggs toast and jam yesterday or your loan is denied.  We will take any changes by the USDA to the interpretation of 7 CFR764.151(b), as an admission of guilt and a failure to make changes an admission of malice.

FSA denied our loan application in 8 working day's, including theThanksgiving holiday post marking it complete.  They made this loan decision without ever asking a single question of the applicant. They never pulled a credit report. They presented to us a

declination letter that was loaded with false, misleading, and fraudulent statements. They sent us to a mediation program that had lost it's certification two months prior to the date of the declination and was no longer a valid option. Therefore, again FSA failed to follow their own procedures. This two was evidenced in our briefs.  We also find the Agency negligent and liable for the fraudulent presentation of laws in the code of federal register and the presentation of FSA's interpretation because, in their own documented procedures for preparation of declination letters the ones we found they fail to instruct their associates not to paraphrase laws and regulations in their citations.  We note that a FOIA request for these procedures was made and we were not provided any on declination although, we found them in their handbooks.  Which additionally, means FSA was negligent in processing the requested FOIA information request.  Was the omission an intentional attempt to further deceive the applicant?

The letter was penned by a loan manager whom we had never heard of nor met. We googled his name to see what we might learn about him and discovered he lived or had lived in the adjacent county.  FSA's connections to the local community gave us serious reasons to be skeptical of fair and impartial treatment.

Our request for mediation was made less than two weeks after receiving our declination letter.  It took that long just to calm down from being blind sided by rules and regulations we were not informed of nor had we any knowledge existed.  We had been waiting for FSA to schedule the appraisals we had been informed would occur and to obtain a copy of our credit report when this declination arrived.  FSA had plenty of time based on their review rules to work with us on any of these matters.

 After about 6 weeks, we had received no communication from FSA or the mediation program.  We searched the internet to find a contact name.  We had already lost complete trust in FSA personnel for a variety of reasons.  We found the mediation program director, Ms Johnson's contact information, only on a New Mexico University web site and nowhere to be found otherwise.  Why does FSA not provide applicants with the phone contact information of the mediation program director?  Does the USDA not have any tracking of mediation requests and their status in place?  Negligent in todays electronic environment.

We contacted the mediation program director on Jan 7th, 2013 with a phone call.  She informed us that she had received our request and was behind as a result of the holidays and would be scheduling our mediation within days.  We emailed her on Jan 10th requesting information on our NAD time constraints. She emailed us back with that information and informed us again she would be scheduling our mediation likely the next day.  We waited till the middle of the following week and contacted her again this time we were unable to reach her and she did not return our calls.  On Jan 24th, we contacted FSA through the FSA online help and learned that the mediation program had lost it's certification.  We later learned from Mrs. Johnson that the mediation program had lost it's certification the first of October 2012.  Mrs Johnson later e-mailed us to say she was unable to reach us by phone.  Why then, had she not just sent an email?  It is our understanding that certification is given by the USDA.  Was the termination of

program certification never communicated to the local FSA office?  Was the local FSA office never informed of a need to change their mediation procedures?  Or was the local agency negligent in making those changes?  Why are there no procedures within FSA for handling applicants when the status of a program changes, per the regulations provided to our FOIA request?  Why in late January was the Executive Director, Calvin Parrish, unaware Virginia had lost it's mediation program certification?  Was the USDA negligent in communicating the pulling of Virginia's certification even to the Executive Director?

It is logical for us to presume, that FSA loan officers, and the loan manager, often work with the mediation program director.  The false representation by the mediation director, on multiple occasions, and the failure to notify us of the programs status, left us asking - had the FSA loan manager and the mediation program director colluded to misinform us on the mediation program?  We will always ask, did FSA intentionally direct us to a program they knew was no longer in operation attempting to send us into a black hole?  Why had Ms Johnson intentionally deceived us on the status of our mediation?  Why after so many weeks had no one from FSA or the mediation program contacted us on the status of our mediation request?  We understand that FSA adheres to strict time limits yet  no one is asking about the status of our request?  Why did we have to go to FSA online to get action on this matter?  It's our opinion that dropping our request into a black hole was negligent of the Agency and the USDA program administrators. That Ms. Johnson's false and misleading correspondence was additionally fraudulent representation.

Having contacted FSA online, we received a letter from the State Executive Director, Calvin Parrish.  Mr. Parrish's letter was written, as if there had been no issues met with our request for mediation.  The failure of this management to acknowledge the mistake made in sending us through a process which had been eliminated is seen by us as an attempt to avoid responsibility for the delay's in our mediation.  To ensure our mediation right, we contacted NAD to inform them of the break down in communication with our mediation request.

We were instructed to find a mediator and FSA continued to delay any mediation as long as they possibly could.  We asked the mediation personnel to have FSA provide copies of specific documents that we had provided FSA for reference.  A copy of the letter and schedule of Nov 9th, our schedule of liabilities, and additionally a copy of the credit report used in making their loan decision.  Because, the letter and the schedule showed we had not requested living expenses only labor, that we requested only to make improvements to our dwelling, not purchase, or construction of a complete dwelling, or completion of our dwelling.  The schedule of liabilities and the credit report showed we did not have any real estate debt to refinance.  Both of these false accusations were given as reasons for our loan denial.  Our request for these documents was not appropriately communicated to FSA, however; the request for the credit report used in this determination, did get requested before mediation.

FSA personnel pulled a current credit report on February 8th, 2013 and presented it to us as if responding to our request.  This action caused us harm by damaging our credit profile.  It was done in violation of the Fair Credit Reporting Act that limits access to credit reports for only valid applications for credit or pre-approved offers of credit. Having already denied our loan application, FSA had no right then to access our credit file.  Additionally, it's presentation to us was fraudulent.  Any knowledgable loan officer knows that an individual can pull a current credit report on their own without affecting their credit profile.  Furthermore, it is fraud for the agency to take payment for the expressed purpose of obtaining a credit report and not providing it.  FSA collected a fee from us for a service without providing the service that was, the expressed purpose of the fee. We find the agency liable in this matter.  Having requested FOIA audit reports on our loan application, we were informed no such reports exists.  The agency should have, a requirement for the loan officer to indicate in the loan origination system completion of pulling a credit report and input of specific credit information.  It's appalling FSA has no audit reporting on an origination system handling so many millions of dollars in loans annually.  No way to determine if loan officers and managers are fraudulent in their processing activities.  Especially when the volume of appeals is so large. This again is based on the information obtained in our FOIA request that no audit reporting on the origination system is available.

Mediation was a complete and total waste of our time and money.  The loan manager, by his own admission, showed up for the meeting unprepared and they came to the mediation with limited time to devote to the process.  At this time, we refrain from discussing the details of these conversations regarding our mediation agreement. However, after mediation, we learned that FSA personnel are protected from prosecution  under sovereign immunity granted to them by congress and revocable only under congressional rule.  Therefore, we respectfully request that the office of inspector general review whether the USDA's mediation program is legal.  Because to participate in mediation, we were asked to sign an agreement to mediate and a confidentiality agreement.  At the time, the individuals representing the USDA and the FSA were also required to sign the document.  As a farmer and not a lawyer, I believed they were legally bound by the agreement, as I felt I was.

However, If the agency representatives cannot be held accountable for breaking the agreement because they have immunity from prosecution revocable only by congressional act-then they've given up nothing!  Under contract law, this would be considered fraudulent inducement making the agreement invalid.  So does the USDA commit fraud each time they push farmers down the road to mediation and sign these agreements without disclosing they cannot be held accountable if the USDA breaches the agreement? Furthermore, we were informed of a mediation success rate we find highly unlikely based on conversations with knowledgeable legal advisors.

In a recorded post mediation conversation on March 4 initiated under a false premise by Mr  Kraszewski, he told us, there was no difference between a house on the farm and one close by as it related to FSA's interpretation of 7 CFR 764.151(b) and this is really the only thread by which to attempt justifying that our use of funds to make

improvements to our dwelling be dismissed. Perhaps the despicable grammar in the FSA interpretation of 7 CFR 764.151(b) is intentionally incomprehensible for malicious intent.  That is, FSA wants to use this as a means of discrimination.  Which is precisely what they have done in our case.

Considering our FOIA request for the rules and regulations governing the making of changes to handbook regulations, we contend that FFSA was negligent in making changes to the interpretation of 7 CFR 764.151(b).  Changes to these regulations are to be processed through multiple reviews and revisions and are signed off by multiple levels of management including the Deputy Administrator of the farm loan program. This interpretation has obvious grammatical errors and inconsistencies identifiable by most word processors in use today.  The interpretation is clearly inconsistent with FFAS stated objective to produce clear, concise, consistent, and complete instructions that comply with governing laws and regulations as well as FFAS policies and procedures.

During the pre hearing, we found the hearing officer and FSA representative's badgering us to define labor cost as living expenses. It was apparent from our first meeting with FSA that these associates did not have a grasp of basic accounting principals.  Furthermore, the badgering was an attempt to bully us into accepting their prejudicial interpretation of classifying paying oneself for labor a request for living expenses. The fact that these individuals, after all their time with FSA believe that a farmer or anyone else should work for free is just plain ignorant.  According to FSA's own documentation they are to assist small businesses and farms to reach commercial viability.  Any business that fails to account for paying management is doomed for failure. There is no small business, corporation, or not for profit that does not compensate management for working except in unusual circumstances.  While at first, the hearing officer accepted the fact our intention was to pay for labor he later attempted to reclassify the action as living expenses.  Given his 25 years, he either was attempting to bully us in favor of FSA or was himself ignorant of appropriate accounting as well as appropriate business practice.

When the Agency submitted their review record, it contained 1 schedule from our application and a copy of our house plans. That was all they looked at in reviewing our application?  Conspicuously, the 1 schedule was not accompanied by the written communication that had accompanied the Nov 9th documents. The same documents we had requested be presented for the mediation.  The two missing pages are likely the **key** to this entire prejudicial injustice.

During the pre hearing, we were badgered on living expenses to the point we discussed, the accounting treatment we had intended to deploy to get our new legal entity handling the payroll and business expenses. We had previously discussed this with Mr. Rigney when we called him to inquire about items he indicated we had not provided.  He knew at the time of the communication these items had been given to, and were in the possession of the local FSA office.  It was apparent to us during that conversation, that Mr. Rigney lacked any understanding of the use of an LLC legal entity

for business accounting, and both these items further evidenced Mr Rigney's hostility toward us.

In the April 5th filing to the Hearing officer by Mr Kraszewski, there are so many issues with written lies, false accusations, incompetent business arguments and deceptive presentations it would be to difficult to cover them all.  But here are a few.  It is repeatedly stated in multiple lies that we had requested loan funds to pay living expenses.  We are fully prepared to prove through our recorded conversations no such statement was ever made.  At the time, it was a foreign idea to us. The statement is made that for loan funds to go to the LLC would neither be the borrower method nor the contract method and that FSA had never heard of the LLC. These are both false statements and documented in our followup briefs.  It is stated that if we wanted to use the borrower method we should have provided FSA-2150 and that the borrower method is not allowed to submit cost estimates. The borrower method was something we had introduced to the FSA personnel in defense of our request to pay ourselves to work. The fact is, FSA personnel made multiple representations to the hearing officer both in this communication and in the hearing regarding this matter and prior to our showing it to them, in their manuals, they had no prior knowledge of it's existence. I seriously doubt to this day given their education and training they have a valid understanding of the borrower method.  Mr. Kraszewski's statement that I changed my mind and now wanted to call my request for living expenses labor, is simply a down right deceptive, despicable, lying attempt to place blame for their ignorant mistake on us.  He went so far in attempting to place the blame on us he was willing to commit perjury under the hearing's declaration.  Although, we're sure he never expects to be held accountable with his sovereign immunity.

No we did not address for the hearing, nor in our briefs the presentation in these documents of what constitutes modest in size cost and design. Like the rest of this document it is full of false and deceptive presentations.  The document sent to us did not even give us the addresses of the homes for comp's they were conveniently cut off. We were able to find one and noted it was built in 1938.  Furthermore, the hearing officer had indicated to us in his letter dated March 28th that the discussion would be whether modest in size cost and design was applicable to the improvements we requested and FSA had not addressed that at all in their brief nor did they address it in the hearing with any justifiable explanation.

As a qualified accountant and a hard worker all my life, I had simply requested to pay myself for physical labor as any supervisor in a small company should expect. This was labor on the construction and development of fixed assets. One of the main reasons for ever showing myself as getting paid was to provide evidence that we would have the necessary income to afford the loan payments until the vineyard became a productive asset of the farm, providing income to the farm to support the loan.  Why would an accountant ever call that; a request for living expenses?  What's more important, why would FSA personnel not know the difference?  Why did FSA not have issues with paying the temporary labor cost?  Why was paying them for labor not a request for their living expenses? The answer?  Ignorance.

We made FOIA request of FSA for the following items and reasons:

1. Any available internal audit reports available on our loan application.
    1. Having extensive experience with loan systems both on the finance support
       side as manager of accountants and business analysts and as technical
       programmer and technical program manager working with all interfacing
       systems to the general ledger of one of the top five largest banks in the
       country, I know FSA should be producing audit reports on the loan
       origination system. FSA should be verifying not only that loan officers have
       done their due diligence but that they are not falsifying information put into
       the system.  At minimum, a reasonable test and verification of the input
       data and check list for the officer to ensure they have obtained all the
       required documents before marking an application complete.  The failure of
       FSA to have such audit reports in place is again negligent.

2. We requested very specifically a detailed review of the date each communication was
   printed from the loan origination system along with specific review of the date on the
   communication itself.  For all correspondence sent to the appellant regarding the loan
   application between October 10th and November 28th.
    1. FSA provided copies of the documents produced but zero information on
       when they had been printed by the system. The inability to review these
       types of actions by employees is negligent.

3. A detailed copy of FSA's internal procedures when the status of a state mediation
   program changes.
    1. We made this request expecting that there were procedures in place with
       the USDA, FSA, FSA field offices, and the program director to handle
       mediation request in process when the USDA pulls a states certification.
       We were provided only the procedures in the handbook. These do not
       address how to deal with in process applications nor any specific
       notifications to affected parties by such actions.  The handbooks only
       guidance is based solely on whether the state has a certified program or
       not.  The break down in communication and the handling of our mediation
       request is evidence that the USDA, FSA and the program administration
       are negligent in failing to have procedures of program certification changes.
       Negligent for not having a mediation request tracking system.

1. A copy of any procedural check list FSA has before issuing a declination letter.
    1. This request was made because the multitude of false, misleading and
       fraudulent representations made to us in our declination letter.  FSA
       provided no information on denial letters to our FOIA request. This was
       again negligent of the agency in failing to even provide the information that
       is available in their handbooks.  Although, the adverse decision letter
       guidelines state the "letters should contain as much information as possible
       summarizing all pertinent information".  The handbook instructions for

preparation of such letters are extremely inadequate by failing to instruct agency representatives to avoid fraud by not providing code of federal regulations and the agencies own interpretations in full context rather than allowing personnel to write their own laws and interpretations.

1. A copy of FSA's internal procedures for making changes to FSA's farm loan program handbooks.
    1. This request was made to get an understanding of how FSA interpretations so grossly negligent and incomplete in grammatically form were able to be published and maintained in the handbooks for so long?  Given the required procedures for review and insertion into the handbooks.  The only explanations are gross negligence, incompetence, myopic prejudice, or intentional malice.
    2. We would also point out that FSA took a great deal of time in providing this information, arriving in our possession too late to be discussed by us in the hearing, although it would not have been allowed anyway.  Why when the information was a single PDF handbook, did it take so long for this FOIA request to receive a response?  All the others were completed in a somewhat timely manner, true they were not all accurate or complete which is also very disconcerting performance by our federal government.

1. We requested copies of the loan manager and the loan officer's resumes and training history.
    1. My personal accounting, programming, data analysis, and management experience told me the FSA representatives did not have the educational background nor training to understand the concepts they are charged with administering.

        A review of their resumes and training history documents shows we are correct in this assessment.  Neither of these gentlemen has any
real                        background in accounting.  Neither shows having had any training
on                          construction accounting, small business accounting, small business taxation, legal entities, or credit review.  How do you expect them to perform the function of helping farmers, especially beginning
farmers, with
        establishing a business worthy of commercial credit?

                        It is our informed believe that neither of these individuals has in their careers ever met with the circumstances or been asked to apply the regulations they used to deny our loan application.  Furthermore, we believe that the lack of proper education and training around this subject matter is responsible for the ignorance that bore the prejudice to deny our application.  Ignorance however, is no excuse for lying and perjury.

The USDA FSA is negligent for having placed these individuals in a position of responsibility for which they did not have the appropriate education.  Furthermore, the USDA FSA is negligent for failing to provide and require them to get the appropriate training.  The lack of this                educational training is evidenced by the agencies recent mandatory    training efforts to educate employees and the training records provided by our FOIA request. It is apparent from the description on the training            communication of FLP629 that the agency is aware of training needs by        making them now mandatory. That specifically the courses on legal                            entities and not simply completing a check list are relevant to                our case.

Although, we will never be confident about what transpired because, FSA personnel have demonstrated their willingness to write and speak lies to the point of perjury.  It is interesting, to look at these gentlemen's training history and see the numerous training courses in ethics, and yet they still fail to demonstrate having any, and cannot be trusted.  It's quite ironic, these individuals with such poor ethical and moral standards willing to confirm a lie under penalty of perjury, are given deference in understanding rules and regulations.

There are however, significant facts to suggest the truth.

These facts start with the first line of the second paragraph of the declination letter. "*You have requested FO loan funds to pay living expenses **via** paying ones self for labor to allow loan installments to be made. This is **NOT** an allowed purpose **(use)** of loan Funds.*"

The loan officer decided paying our selfs for labor on capital improvements was equivalent to requesting funds to pay living expenses. He was adamant is his belief and shows his arrogance with the emphasis on the word NOT and (use). Considering the following facts, we believe that Mr. Rigney put our request for labor on capital improvements into his checklist or the origination system as living expenses, at that point the system, or his check list, rejected the application as inappropriate.  Mr Rigney was at that point prejudice in every other aspect of reviewing our application.  This is why he believed he should deny the application, the reason it was listed on the declination letter first. Yes Mr. King prejudice is always borne from ignorance.

Mr. Kraszewski consistently attempted to say we requested loan funds for living expenses.  Agency record (AR) page 5 Par. 2 "1), They requested Farm Ownership loan funds to pay themselves living expenses for two years ($70,000)." AR page 5 Par. 6 "The Julians want to use FO funds for living expenses which is not an authorized loan purpose" Agency exhibit (AE) filing page 1 end of Par 4. "Mr. Julian was going to pay

himself loan funds for two years to cover his living expenses and make his FSA payments" AE page 2 Par. 4.  "It appears to me the term he uses "living wage" is a reference to living expenses and not paying labor"  AE Page 2 Par 6. "In summary Mr. Julian has indicated to the agency he wants to use loan funds to pay himself living expense for two years" Pre hearing(PH) audio recording starting at 20 min 35 seconds ' "His labor which is his living expenses." Hearing recording (HR) 72 min in Mr. Kraszewski, "You would use the 70,000 to pay yourself labor and then use the funds to pay your living expenses".  (HR) 73 min in "The issue we're discussing is the $70,000 the loan purpose which the agency stated that the requested loan fund purpose of living expenses is unauthorized loan purpose according to information that we submitted that states what FO loan funds can be used for. Now if Mr. Julian wants to resubmit a new application to pay labor we would be happy to process an application for that." "**The Agency's position is it was denied based on the request to pay living expenses.** "  (HR) 76 min in **But again if they want to resubmit an application to say they were going to pay labor we would be certainly happy to process an application for that**." (HR) 89 Min in  **Hearing Officer "you understood  that the appellant wanted the money for living expenses, where did you get that understanding? " Mr. Kraszewski in previous discussion with Mr. Julian and Mr. Rigney " Hearing Officer "you came away from that discussion with the understanding he wanted to be paid for his living expenses. " Mr. Kraszewski  "Yes." " Hearing officer "you just testified that if he wanted to be paid for his labor it's a whole different matter and would require a new application."  Mr. Kraszewski "Correct "** Hearing Officer I'm a little taken of guard by that position.  (HR) 94 min in Hearing Officer "Mr. Kraszewski your position is the original application was to be reimbursed for living expenses if the appellant wants this money to be used towards labor he would have to refile. Is that what you said here today? " Mr Rigney " He said it could be reconsidered is what he said I think that's what he said" (HR) 95 min in Hearing Officer "So your original decision is that you can't pay living expenses" Mr Rigney "with FO funds" Hearing Officer **Your reason for living expenses was through some discussion? Mr. Kraszewski "Correct"** HR 96 min Hearing Officer to the appellant  "your position on this is that exhibit E page 3 of 3 shows that I wanted this for labor."  Mr. Julian "that's correct never discussed living expenses" **Mr Rigney  "for his own labor not for someone else labor for his own labor to over a period of time for his living expenses to be used to pay back on this loan as loan payments."** (HR) 118 min in Mr. Rigney "Mr. Julian, the day we came out to view your property did you not tell me your were going to use these loan funds to turn around and make loan payments with? "

*Mr. Julian "I stated that through my salary I would have the ability to make my loan payments."  This is the one and only white lie we made in this entire process. I hesitated then because, I knew at the time, when the question was asked, that I had made this statement to Mr. Rigney, However, I was not certain whether I had done so during his site visit. I knew it was in the November 9th 3 page document page 1 paragraph 4. The one FSA left out pages 1 and 2 of in the Agency record which showed on the schedule, the request was for Labor not Living expenses. Why did they only submit page 3 of that document in the agency record?  The fact is after reviewing the audio recording this*

*subject was never discussed with Mr. Rigney it was only communicated in our Nov 9th communication.*

Note a borrower is supposed to work for free?  It would be okay with Mr. Rigney if I paid someone else to do the work just not me?  No small business, large corporation, even not for profit expects people to work for free.  FSA should not expect farmers to work for free.  Our approach, we noted in the same paragraph, may be unusual but the intention was to show how we could afford to make the loan payments until the vineyard became productive. There was never an objection to the part time labor cost.  So if I paid someone else to do work, I was fully capable of doing, it would have cost significantly more and we would not have the cash flow for several years to justify our loan payments.

This is the reason FSA denied our application.  Because Mr. Rigney does not have the appropriate education or training to discern between living expenses and labor on capital improvements.  He thinks, if a small business owner pays himself to work on capital improvements, and then uses those funds on living expenses he has requested living expenses.  Furthermore, he believes if he uses his compensation to make his loan payments, it's refinancing of real estate debt.  The third and dropped from discussion declination reason given.  We believe Mr. Rigney was prejudiced by this view and this prejudice was prevalent in every other declination argument and decision he made.  It is also why Mr. Rigney never pulled the credit report.  Did he ask anyone else about this decision. Did he request assistance from Mr. Kraszewski.  Do either of them have upper level management support to aid with accounting or finance questions?  Are they arrogant or ignorant enough to be unwilling to admit they don't know something?  Why with 40 years of combined experience at the USDA did these gentlemen not have any exposure to these sections in their handbooks?  Why did Mr. Kraszewski make so many false allegations?  Why did he approve this declination letter?  Perhaps the Thanksgiving holiday was just to close to for any real work.  I am personally astounded by the lack of business acumen and the unethical  behavior demonstrated by these federal employees with more than 40 years combined experience at the USDA.

What is it about the culture of the USDA FSA that these gentlemen would lie to the point of committing perjury to hide a mistake?  Mr. Kraszewski made these many false malicious allegations about our request for living expenses to avoid the truth.  I suspect because he approved the document and he is protected by sovereign immunity from prosecution and therefore feels free to do whatever to avoid responsibility. Additionally, during the hearing Mr. Kraszewski stated the mis communication sending us to the wrong mediation channel was a timing issue?  How is that true if Ms Johnson new the certification had been lost in October? How is that true if FSA Online communicated to usThe State Executive Director was unaware in January, that Virginia had lost it's certification? And Our Foia request came back with no other procedures than what's I the handbook?

As to the improvements we requested to make on our house,  we believe Mr. Rigney prejudiced by his beliefs just discussed, went looking to beef up the declination letter

and believed at the time he wrote the declination, the rule was not applicable to our request. A close look at the fraudulent presentation of the Code of Federal Regulations and the handbook interpretation show's an attempt by Mr. Rigney to make them relevant. Furthermore, FSA on three separate occasions made the statement that if we would simply change the request to labor and make a new application they could work with us. Why are the improvements not an issue if we resubmit?
It's also why they did not submit any evidence in the hearing or exhibits to substantiate that the means test was applicable to improvements on an existing dwelling. They don't believe they are.

Furthermore, to look at FSA's interpretation and ignore the fact that an alternative was expressed and none was given, you must prejudice your interpretation to assume you know what was intended and not what was written.

We fully demonstrated in our briefs, the facts show, a proper interpretation of this interpretation of a regulation based on proper English grammar, would apply the means test of modest in size, cost, and design, only when the applicant requested to use funds for the purchase or construction of a new dwelling.

We have further shown, based simply on the proper reading comprehension of English grammar that the means test in the paragraph is not applicable to improvements to an existing dwelling close to the farm.

Only by proving **beyond a reasonable doubt** that a dwelling on the farm, and one off the farm, are afforded the same privilege of using FO funds to make improvements; have you afforded the appellant a preponderance of the evidence in this case? We stated in our briefs and were told that our burden of proof in this case was a preponderance of the evidence. Not beyond a reasonable doubt. The contention, they should be afforded different treatment is illogical and contrary to the implied preference in the preceding sentences that new dwellings purchased or constructed be on the farm.

Allowing deference of interpretation should not be used to ignore a failure of reading comprehension. Nor should it be used to avoid accountability or responsibility for vague and incomprehensible interpretations of regulations.

Lets review paragraphs 2 - 4, reasons given for declining our loan on the declination letter. We would contend that given this is the first  paragraph given it was  Mr. Rigney's primary reason for denial.   First sentence of par 2. Mr Rigney shows you he took our request for labor and defined it as a request for living expenses. He cited a section of the Code of Federal Regulations and the FSA handbook as his justification that was completely inapplicable to our loan request. He and Mr. Kraszewski later defended this as a general classification on the use of FO loan funds. It is not!  It is a statement specific to the use of FO loan funds for purchases. An inaccurate statement and comprehension failures 1 and 2 by Mr. Rigney and Mr. Kraszewski.

In paragraph 2, Mr Rigney stated that we requested loan funds to complete construction of a large dwelling.  This is a false statement.  Our Letter of Nov 9th shows that fact.  Furthermore, we know that Mr. Rigney believed, contended, and supported the argument that we wanted to complete the house from later recorded discussions with him.  Another of his arrogant prejudicial perceptions.  We have previously discussed the fraudulent representations of the Code of Federal Regulations and the Handbook interpretations to justify this explanation as well as the gross negligent, vague, grammar in FSA's interpretations.

In paragraph 3, Mr Rigney has decided that If we paid ourselves for labor and used our compensation to later make loan payments we were refinancing debt.  This is just plain ignorance.  It shows a complete lack of understanding as to what refinancing of real estate debt is.  This is again an astonishing lack of comprehension for a Loan Officer especially one with over 20 years at FSA.

Two Thirds of this declination letter was dismissed as invalid and the third number 2 has so many issues it's simply indefensible.  Most importantly, FSA is being given deference in interpreting their own rules when they do not know, understand, comprehend, or follow them.  Furthermore, this one is incomprehensible based on accepted rules of English grammar.  That is simply and pathetically an attempt to  cover up incompetence, and avoid responsibility, and accountability.  Frankly, government at it's worst.  During our journey through this process, we heard or were given the following statements.  We wish to address them here.

This is a good process, I have seen it work.
We are confident NAD will carefully consider your position and render a fair and impartial decision.
FSA is charged with being good stewards of the government's money.

The fact is for applicants, this is a horrible process equivalent to, torture, and psychological rape. The entire process is biased to favor protecting the government and it's employees from responsibility and accountability for incompetence, negligence, fraud, and crime.

The process is dragged out intentionally to burden applicants obviously in hopes they will miss a deadline, find the process requirements overwhelming and give up or windup bankrupt trying to survive the lengthy ordeal.  Even in the presentation of a case, the appellant's documentation requirements are more burdensome than the agencies.  In our case, the USDA has dragged this process out now more than 7 months.

The whole process places an applicant that questions a decision into a legal battle where they must spend excessive amounts of time to defend against an opponent with unlimited time, unlimited financial resources, and no requirement to abide by laws.  If an applicant  can understand their rights and has the time, knowledge, and ability to pursue their own legal battle.  Otherwise, they need to find an advocate or lawyer to assist them.  Just what a farmer requesting a loan needs, significant legal expenses.

The Loan personnel are free to write anything as a reason for declining an application. If an applicant contests it and the USDA does not want to support their statements, they simply drop them from discussion.  Freedom to manufacture reasons for loan denial without any accountability.  How many farmers simply accept the reasons as valid because a government official says it's the case.

NAD restricts discussion of negligence, fraud, prejudice, and in so doing disallows due process to appellants in the presentation of their case.  Especially hyaenas when the applicant is given the burden of proof and Government personnel are given complete freedom to perform these acts without fear of prosecution because they have sovereign immunity.

NAD acts as a bully through out the process continually looking to defend FSA's positions no matter how inept a position taken.  If they can find a way to say it's a reasonable interpretation, they will defend it.  Even if the argument is completely wrong and incompetent.

Loan personnel appear to be allowed to be negligent in their duties and in following their own procedures.  Inept at comprehending the rules and regulations, able to make false and malicious statements without any supporting documentation.  Allowed to alter the wording of rules and regulations and fraudulent present them without any accountability. Therefore, they can write their own laws and regulations and not be held accountable or responsible to follow the rules and regulations of the federal register or their own departmental interpretations of those laws.

In our case, loan officers continually made false and misleading allegations, defending interpretations of rules and regulations they had never read, did not understand or have the education or training to comprehend.  Forcing the appellant to continually defend against lies and ignorance.  They were even willing to commit perjury apparently to avoid losing or to hide a mistake.  "Nothing in the world is more dangerous than sincere ignorance and conscientious stupidity." - Martin Luther King Jr.

NAD is no more independent of FSA than my left arm is of my right.  They're both controlled by the same management.  How Congress continues to allow such an obvious failure of segregation of duties, allowing the USDA to police itself is simply criminal.

**In Summary of our case lets just state facts!**

In violation of FSA's own procedures FSA did not pull a credit report for their loan review. **(negligent)**

FSA charged us an upfront fee for the procurement of a credit report they did not acquire. **(fraud)**

FSA only requested our credit report after we received our declination letter and prior to mediation. **(negligent)**

FSA does not generate audit reports from the loan origination system and therefore, has no way to determine whether FSA personnel tricked the system or indicated the pulling of a credit report they did not obtain. (per FOIA request **(negligent))**

FSA sent a declination letter to us advising us to request mediation from a program that was no longer valid. **(negligent)**

FSA failed to follow their own procedures by sending us to the wrong place for mediation.**(negligent)**

FSA personnel produced a declination letter with multiple fraudulent representations of the Code of the Federal Register. (**fraud)**

FSA produced a declination letter with multiple fraudulent representations of regulations from their own handbooks.  (**fraud**)

In each of the fraudulent representations of the register and the handbook the alterations are obviously done with intent to deceive the applicant and conceal pertinent facts. **(malice,fraud**)

FSA redefined our request for labor, calling it living expenses, and did on numerous occasions to the extent of perjury attempt to blame us for that classification. (**negligent, fraudulent, incompetent, criminal)**

FSA used the specific regulation for an FO request for a purchase as a specific explanation for denying our application.  When we did not make a purchase request at all. (**negligent incompetent)**

FSA stated on the declination that we had requested to use funds for completion of a large dwelling and later defended that position.  When factually our request was for specific improvements to protect the structure from deterioration. (**malicious deceit)**

FSA stated on the declination that we requested FO loan funds for the purpose of refinancing real estate debt.  We had no real estate debt to refinance.  This was evident on our credit report and our schedule of liabilities.  FSA defended this allegation by stating that If we paid ourselves for labor and used the funds for loan payments we were refinancing debt. **(negligent, incompetent, malicious false representation)**

FSA never contacted us to discuss a single aspect of our application nor any of the purposed reasons for declination. **(malicious, negligent**)

FSA never followed up on our mediation request to determine a status when it was not following normal procedures. **(negligent**)

The Virginia State Mediation program director told us not once but twice in January she would be scheduling our mediation soon knowing that the mediation program had lost it's mediation certification on October 1st, three months prior to our conversation. (**Fraud, malicious deceit**)

The USDA or FSA had a serious breakdown in communication, in the failure to inform the State Executive Director of the status of the mediation program.  It is completely unacceptable for individuals requesting mediation to just be dropped from the process. (**negligent**)

The FSA State Executive Director responded to our failed attempt at mediation as if he had simply just received our mediation request as it should have been. (**deceptive with intent to deny responsibility.)**

FSA has no documented procedures to follow when the status of the State Mediation program status changes (per FOIA request).  **(Negligent).**

When asked to produce a copy of the credit report used in evaluating our Loan application FSA personnel pulled a current credit report and presented it as if it were the one they used.  This was in violation of the Fair Credit Reporting Act which allows access to credit information only for a valid application for credit or an offer of pre-approved credit.  All loan officers should know that an individual can pull their own credit report without damaging their credit.  This action damaged our credit profile. (**negligent, fraud, criminal)**

FSA's interpretation of CFR 764.151(b) has significant and obvious grammatical errors making the entire paragraph vague and incomprehensible.  Based on the information provided in the FOIA request, FSA has numerous levels of oversight, review, and sign off on the implementation of these interpretations.  The fact that this paragraph made it to publication in it's current form and has continued to be in place for more than a year reflects either incompetence and negligence or intentional malice.  (**negligent**)

Neither the Farm loan officer, nor the Farm loan manager, has any real education in accounting, no training in legal entities, no training in small business taxation, no training in fundamental book keeping, no training in farm taxation, no training in business performance evaluation, no training in capital improvements, no training in construction accounting, no training in credit analysis.  The register rules and handbook regulations we looked at around Direct Farm Loans are specifically tied to appropriate accounting rules and IRS regulations.  That these gentlemen lack this education and in 40 years of combined experience with FSA have not been required to take such training is inexcusable on the part of their management. **(negligent**)

When we asked about eligibility requirements for a farm loan we were directed to FSA's, "Your Guide to FSA Farm Loans".  Nowhere in those eligibility requirements is any discussion about the size or style of your farm house.

The Government currently assesses our property at $243,000.  This assessment was made January 2011 and does not reflect improvements made in 2011 or 2012.  We requested a $300,000 FO loan for capital improvements to this property.  Our proposal then was 243/300 was an upfront 81% equity stake based on government tax assessments.  We offered to provide more than 300,000 in capital improvements. Provide employment to 3 people.  Guarantee that the borrower was employed and would have resources to make payments for the next 2 years.  Our business plan included bringing a vineyard into production which the state agricultural secretary pronounced in January 2013 was something the state needed to keep up with demand. We were ahead of this demand cycle and the combination of the Apple and Grape crops alone would have provided more than enough cash flow to support this loan application, without the wine production we wished to pursue.  How many beginning farmers come to FSA with an upfront 81% loan to value, with most all of the necessary equipment to operate paid for?  Willing to finance a job and provide the labor to cover all expenses until the crop reaches initial productivity?  How many people are looking to start a business in high unemployment rural communities in desperate need of economic activity?

How much money did we already pump into this community?  How much did we spend farming over the last 4 years making us eligible for a farm loan?  If we had that money back we could have likely completed the whole house.

NAD has chosen to support the argument that were not eligible for FO loan funds because we want to make improvements to our house and because its on the farm not off, you're not eligible.  He supports this by stating that FSA is due substantial deference in interpreting their own rules.  Despite the fact they have demonstrated they could not and did not follow them.  Despite the fact they did not understand them.  Despite the fact they were willing to make fraudulent representations.  Despite the fact they would commit perjury to place the blame on us rather than admit a mistake.

Would you say this is a fair and impartial process?  Let's ask the American public.  Let's ask the community that has and will suffer from FSA's performance and ideology.

We would say the USDA, NAD and FSA and this process are completely biased with specific intent to harm applicants and allow FSA to remain ignorant, irresponsible, and unaccountable for gross negligent, fraudulent administration of the peoples money.

Farmers are consumers too.  We ask that the Consumer Financial Bureau take a very hard look at the USDA Farm and insurance programs.  We ask that congress take a very hard look at the USDA being allowed to police their own organization.  In our journey, we have found the USDA having these issues for decades.  We ask that the inspector general perform a thorough review of our negligence, fraud, perjury, criminal,

and prejudicial complaints.  Additionally, we would site the application of the vague and incomprehensible rules in the FSA handbook as having been used in our case as a means of discrimination and ask that this case be reviewed by USDA, Assistant Secretary for Civil Rights although, assuming each branch of government with USDA in front of it is just another branch of the same organization policing itself, we have very little confidence in the USDA's impartiality.

We have demonstrated the highest degree of honesty, integrity, and moral character from the beginning of our application.  The USDA FSA has been arrogant, negligent, fraudulent, deceptive, criminal, and malicious.  And we are to accept your telling us the rules? This organization is a complete disgrace to the public trust.  Every organization discovers units or departments eventually where the culture has developed so badly it must be scraped to begin anew.  The time has come for Congress and the Senate to do the same at the USDA.

Given that all the individuals named in this document other than the appellants, and we have nothing to hide, are federal employees.  It will not be redacted on publication.

Christopher B  & Renee G. Julian
474 Orchard View Drive
Ararat, VA 24053
Blue Ridge Springs Orchard

CC: Jerry L. King
    USDA National Appeals Division
    193 Downing Street
    Roanoke, VA 24019

    Farm Loan Manager
    Attn. Ronald A. Kraszewski
    USDA Farm Service Agency
    19783 US Highway No 29, Suite D
    Chatham, VA 23229

    J Calvin Parrish
    State Executive Director
    Virginia State Office
    Suite 138
    Santa Rosa Road
    Richmond, VA 23229

    Chris P. Beyerhelm
    Deputy Administrator For Farm Loans Programs

U.S. Department of Agriculture
 Farm Service Agency Stop 0520
1400 Independence Avenue SW
Washington, D.C. 20250-0520