IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. JULIAN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:13-cv-00054 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JAMES RIGNEY, ET AL., | ) | By: Jackson L. Kiser |
| | ) |     Senior United States District Judge |
| Defendants. | ) | |

Plaintiffs Christopher B. Julian and Renee G. Julian ("Plaintiffs") applied for and were denied a Farm Ownership loan through the Farm Service Agency ("FSA") of the U.S. Department of Agriculture ("USDA"). As a result of the denial, Plaintiffs, proceeding *pro se* and *in forma pauperis*, filed suit in this Court against the USDA, seven federal employees, and one state employee. On October 18, 2013, state employee Wanda Johnson filed a Motion to Dismiss [ECF No. 16]. Plaintiffs filed a Motion for Partial Summary Judgment on January 6, 2014 [ECF No. 27], and the remaining Federal Defendants collectively filed a Motion to Dismiss on January 14, 2014 [ECF No. 28]. Each of the three dispositive motions was met with an appropriate written response, and was followed by a reply brief.

On February 25, 2014, I heard oral arguments from all sides, outlining their respective positions on the facts, law, and agency record before the Court. Having thoroughly reviewed the record and arguments of counsel, the matter is now ripe for decision. For the reasons stated below, I will **GRANT** Defendant Johnson's Motion to Dismiss, **DENY** Plaintiffs' Motion for Partial Summary Judgment, and **GRANT IN PART** and **DENY IN PART** Federal Defendants' Motion to Dismiss. Specifically, I will **DENY** Federal Defendants' Motion to Dismiss with respect to Plaintiffs' request for judicial review of the final agency decision, and **GRANT** the

Motion with respect to all other claims against the USDA, and all claims against the following employee-defendants, in any capacity: (1) James Rigney; (2) Ronald Kraszewski; (3) J. Calvin Parrish; (4) Jerry L. King; (5) Roger Klurfeld; (6) Christopher P. Beyerhelm; and (7) Barbara McLean. The USDA will remain as the sole defendant, and the suit will proceed as an action for judicial review of the final decision of USDA National Appeals Division Director Roger Klurfeld.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On October 10, 2012, Plaintiffs Christopher B. Julian and Renee G. Julian applied for a Farm Ownership ("FO") loan through the Farm Service Agency ("FSA") of the U.S. Department of Agriculture ("USDA"). (Compl. Ex. A, at 1 [ECF No. 3].) The FSA, acting through Farm Loan Officer James Rigney, issued a Notice of Complete Application on November 21, 2012, informing Plaintiffs that their application was deemed complete as of November 19, 2012.[1] (*Id.* Ex. D, at 3.) On November 28, 2012, FSA Farm Loan Manager Ronald Kraszewski issued a letter informing Plaintiffs that their loan application was denied. (*Id.* Ex. A.) In the letter, the FSA explained that Plaintiffs' proposed use of loan funds was not authorized for the type of loan requested,[2] and notified Plaintiffs of their rights to appeal. (*Id.* Ex. A, at 1–3.) Plaintiffs were

---

[1] Prior to receiving the Notice of Complete Application, Plaintiffs first received a Confirmation Letter, dated October 10, 2012, and a Notice of Incomplete Application, dated October 19, 2012. (Mem. in Opp'n to Defs.' Mot. to Dismiss Exs. AO, AP [ECF No. 38].) The Notice of Incomplete Application instructed Plaintiffs to provide additional information by November 8, 2012. (*Id.* Ex. AP.) On November 13, 2012, Plaintiffs received a second Notice of Incomplete Application, dated November 9, 2012, which required additional information (beyond that requested in the first Notice of Incomplete Application) and specified a deadline of November 19, 2012. (Compl. Ex. D, at 1–2.) The Notice stated that failure to comply with the deadline would cause Plaintiffs' loan application to be withdrawn with no right to review, mediation, or appeal. (*Id.* Ex. D, at 1.) The second Notice was dated November 9, 2012, but was postmarked October 22, 2012. (Mem. in Opp'n to Defs.' Mot. to Dismiss Ex. AQ.) The FSA subsequently issued its Notice of Complete Application on November 21, 2012. (Compl. Ex. D, at 3.)

[2] The FSA letter provided three reasons for the denial. First, the FSA alleged that Plaintiffs "requested FO loan funds to pay living expenses via paying ones self for labor [sic]," and explained that loan funds may only be used to acquire or enlarge a farm, or make a down payment on a farm. (Compl. Ex. A, at 1.)

informed that they may: (1) request reconsideration by the Farm Loan Manager; (2) request mediation through the Virginia state mediation program, as part of the FSA's informal appeals process; or (3) appeal the determination to the National Appeals Division ("NAD") of the USDA. (*Id.* Ex. A, at 2–3.)

On December 10, 2012, Plaintiffs requested mediation via a letter to the Virginia Agricultural Mediation Program ("VAMP") with Virginia State University. (*Id.* Ex. F.) VAMP Project Director Wanda Johnson informed Plaintiffs, in an email dated January 10, 2013, that their request was timely, and indicated that she would "be in touch with [Plaintiffs] probably tomorrow regarding the mediation." (*Id.* Ex. C.) Unbeknownst to Plaintiffs, however, the USDA had revoked its certification of the Virginia state mediation program as of October 2012. (*Id.* at 6; Ex. C.) It remains unclear precisely how and when officers of the FSA, or VAMP itself, learned of the USDA revocation.[3]

Plaintiffs claim that they made several attempts to contact VAMP Project Director Johnson and "USDA et al" regarding mediation. (*Id.* at 6.) On January 24, 2013, Plaintiffs allege that they contacted the FSA through an online assistance system, and first became aware of the loss of certification in a subsequent email exchange. (*Id.* at 6; Ex. G, at 1.) Following this exchange, Plaintiffs received a letter from FSA State Executive Director J. Calvin Parrish that was dated January 24, 2013. (*Id.* Ex. H.) The letter indicated that "[a]t this time, Virginia does

_____

Second, while funds may be used to make capital improvements that are "essential to the farming operation," the FSA determined that "improvements completed as you have proposed are not essential," and "exceed what is adequate to meet the family's needs as defined by FSA." (*Id.*) Finally, the FSA alleged that Plaintiffs requested the loan to "make loan payments," and indicated that "FO loan funds may not be used to make loan payments, i.e., refinance loans." (*Id.*)

[3] The pleadings suggest that VAMP Project Director Wanda Johnson and the University are responsible for filing the necessary certification paperwork with the USDA. In an email to Plaintiffs dated January 28, 2013, Johnson indicated that she was recovering from a heart attack, which had caused her to miss at least one filing deadline. (Compl. Ex. C.) She explained that she was working with the University to prepare the necessary documentation, and expected to be re-certified for April 2013. (*Id.*)

not have a State Certified Mediation Program," and informed Plaintiffs that they would need to pay for half the cost of mediation if they choose to pursue it. (*Id.* Ex. H, at 1.) The letter included a list of registered mediators in Virginia.

In a letter dated February 5, 2013, Plaintiffs informed FSA State Executive Director Parrish that they had requested mediation through the North Carolina Agricultural Mediation Program ("NCAMP"). (*Id.* at 6–7; Ex. I.) Noting that they were asked to pay a credit report fee of $20.25 with their original loan application, Plaintiffs requested a copy of their credit reports. (*Id.* Ex. I.) In a letter dated February 8, 2013, FSA Farm Loan Officer Rigney provided Plaintiffs with a credit report; the report was also dated February 8, 2013. (*Id.* Ex. K.) As part of the NCAMP mediation process, Plaintiffs signed an agreement to mediate and a confidentiality statement, indicating that Plaintiffs would keep confidential any information learned during the mediation process. (*Id.* Ex. N.)

On approximately March 13, 2013, Plaintiffs made several Freedom of Information Act ("FOIA") requests through the FOIA Office of the FSA.[4] (*Id.* at 11; Ex. W.) In a letter dated March 22, 2013, FSA State Executive Director Parrish responded with a number of documents that were responsive to Plaintiffs' request. (*Id.* Ex. W.)

In addition to requesting mediation, Plaintiffs appealed their loan denial to the USDA's National Appeals Division ("NAD"). (*Id.* Exs. Q, AE.) Plaintiffs' request for appeal was

---

[4] Specifically, Plaintiffs requested: (1) "[a]ny available internal audit reports available on our application;" (2) "[v]ery specifically, a detailed review of the date each communication was printed from the loan origination system along with specific review of the dates on the communication itself. For all correspondence sent to the appellant regarding the loan application between October 10th and November 28th [sic];" (3) "[a] copy of FSA's internal procedures when the status of a state mediation program changes;" (4) "[a] copy of any procedural check list FSA has before issuing a declination letter;" (5) "[a] copy of FSA's internal procedures for making changes to FSA's Farm Loan Program Handbooks;" and [via a later email attached as part of Exhibit W] (6) "a copy of [James Rigney and Ronald Kraszewski's] most current resumes and any undocumented training you've had that you would like to add." (Compl. 11–12; Ex. W.)

complete on March 4, 2013. (*Id.* Ex. Q, at 1.) During the prehearing, held on March 19, 2013, the FSA withdrew one of its justifications (that Plaintiffs were essentially trying to refinance an existing loan) as a reason for the loan denial. (*Id.* at 8; Ex. U, at 2.) As a result, NAD Hearing Officer Jerry L. King informed Plaintiffs that this issue would not be allowed as a point of discussion during the hearing. (*Id.* at 8.) Plaintiffs objected to this restriction in a letter to Hearing Officer King, dated March 22, 2013, and asserted their belief that the FSA had inappropriately accessed their credit reports on February 8, 2013. (*Id.* Ex. R.)

In a letter to Plaintiffs, dated March 28, 2013, Hearing Officer King declined to reconsider his ruling on the scope of the hearing, and laid out the core issues for discussion.[5] (*Id.* Ex. U, at 2.) With respect to their credit report grievances, Hearing Officer King directed Plaintiffs to the USDA Office of Inspector General. (*Id.*) Noting that Plaintiffs had accused the FSA of prejudicial bias, he provided instructions for completing a USDA Program Discrimination Complaint Form with the USDA's Office of Adjudication. (*Id.* Ex. U, at 2–3.) Hearing Officer King conducted an in-person hearing of Plaintiffs' appeal on April 17, 2013, and issued his conclusion that the loan denial was not erroneous on May 16, 2013. (*Id.* Ex. AE, at 2, 5.) Plaintiffs subsequently requested a Director's Review of the NAD determination,[6] and on

---

[5] Hearing Officer King identified three (3) core issues on appeal: (1) "Is Appellant's proposal to be paid $70,000 from loan funds an eligible FO expense?" (2) "Is Agency in accordance with the Code of Federal Regulations in denying FO assistance because a dwelling may be more than adequate to meet family needs?" (3) "If so, in this case, is Appellant's dwelling more than adequate to meet their family needs when considering size, cost and design, and thus not eligible for FO assistance?" (Compl. Ex. U, at 2.)

[6] Plaintiffs sent a 21-page letter, dated June 17, 2013, to the Director of the USDA NAD, the USDA Office of the Inspector General, the Consumer Financial Protection Bureau, and the USDA Assistant Secretary for Civil Rights. (Compl. Ex. AD.) In addition to requesting a Director's Review of the NAD Appeal Determination, the letter sought "to file complaints; of misconduct, by FSA personnel and it's administration with the USDA Office of Inspector General [sic]"; "to provide the Consumer Financial Protection Bureau with accurate information on our loan application and not the false statements made by FSA and forwarded to them by Chris P. Beyerhelm"; "to file complaints of discrimination with the Office of Assistant Secretary for civil rights"; and to provide "public record and transparency of government agency activities." (*Id.* Ex. AD, at 1.)

July 24, 2013, NAD Director Roger Klurfeld issued a decision upholding the NAD Appeal Determination.[7] (*Id.* Ex. AA.)

Plaintiffs, proceeding *pro se* and *in forma pauperis*, filed suit in this Court on September 16, 2013. (*Id.* at 1.) In addition to a request for judicial review of the final agency decision, Plaintiffs allege a denial of due process and a number of other tort claims, including negligence, fraud, fraudulent misrepresentation, conspiracy, racketeering, and violations of the Fair Credit Reporting Act. Plaintiffs name nine (9) defendants, including eight (8) federal agencies or employees (the U.S. Department of Agriculture; USDA FSA Loan Officer James Rigney; USDA FSA Loan Manager Ronald A. Kraszewski; USDA FSA Executive Director J. Calvin Parrish; USDA FSA Deputy Administrator for Farm Loan Programs Chris P. Beyerhelm; USDA FSA National FOIA/PA Specialist Barbara McLean; USDA NAD Hearing Officer Jerry L. King; and USDA NAD Director Roger Klurfeld) ("Federal Defendants"), and a single state employee, VAMP Project Director Wanda Johnson ("Defendant Johnson"). (*Id.* at 1–3.)

In addition to an *ad damnum* clause requesting approximately $14 million in damages (representing $1 million per month since January 1, 2013), Plaintiffs ask that $1 million be

---

[7] The Director upheld the Appeal Determination on the grounds that the house, with the improvements, exceeds what is adequate to meet the family's needs, but did not decide whether the improvements were essential to Plaintiffs' farming operation. (Compl. Ex. AA, at 3.) According to the Director, Plaintiffs had requested $172,000 for materials and $128,000 for labor in order to finish construction on a house that they had begun building in 2010. (*Id.* Ex. AA, at 1–2.) In the Director Review Determination, he noted:

> Currently, [Plaintiffs'] household consists of three individuals. [Plaintiffs'] house will be 4,600 square feet, with 2,400 square feet on the first level and 2,200 square feet in the basement, plus an attached two-car garage. [Plaintiffs] plan[] to construct a recreation room, a third bedroom, a fitness area, a second master suite, and a winery in the basement. The blueprints for [Plaintiffs'] home also show an 11'6" by 11'6" walk-in closet, a morning porch, two foyers, a deck, and a screened porch on the second floor. Based on this evidence, [Plaintiffs have] not proven that the house adequately meets [the] family's needs and is modest in size, cost, and design.

(*Id.* Ex. AA, at 3) (internal citations omitted). In light of the proposed winery, it is worth noting that Plaintiffs had intended to develop a vineyard on the farm.

awarded to each of five other individuals who are not parties before the Court.[8] (*Id.* at 21–22.) Plaintiffs request that "all settlement amounts be net of taxes," and seek refunds in the amount of $20.25 for a credit report and $350.00 for mediation costs, both compounded with interest at 24.99%. (*Id.* at 22–23.) Plaintiffs ask the Court to require the USDA to prosecute FSA Farm Loan Manager Ronald A. Kraszewski for perjury, and require "USDA et al" to "create and provide a comprehensive guide for appellant rights." (*Id.*) Plaintiffs also request attorney's fees for self-representation. (*Id.* at 23.)

On October 18, 2013, Defendant Johnson filed a Motion to Dismiss [ECF No. 16]. Plaintiffs filed a Response in Opposition on November 8, 2013 [ECF No. 22], and Defendant Johnson filed a Reply on November 15, 2013 [ECF No. 26]. On January 6, 2014, Plaintiffs filed a Motion for Partial Summary Judgment on paragraph 11 of the Complaint [ECF No. 27].[9]

On January 14, 2014, Federal Defendants collectively filed a Motion to Dismiss [ECF No. 28], and a Memorandum in support thereof [ECF No. 29]. On January 29, 2014, Federal Defendants filed a Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment [ECF No. 37]. Plaintiffs filed a Memorandum in Opposition to Federal Defendants' Motion to Dismiss on February 3, 2014 [ECF No. 38],[10] and a Declaration in Support thereof

---

[8] The individuals are Plaintiffs' former employees, John Sailor and Cody Dalton, who Plaintiffs claim would have received wages from the farm; Dayl Dawson, the owner of a home that Plaintiffs are no longer able to rent; and Plaintiffs' mothers, Jane A. Julian and Retha Graham, who Plaintiffs claim would have lived with them in the finished house. (Compl. 21–22.)

[9] Paragraph 11 of the Complaint is an argument concerning the mediation agreement and confidentiality statement that Plaintiffs signed as part of the NCAMP mediation process. In essence, Plaintiffs argue that their lack of knowledge of sovereign immunity constitutes fraud in the inducement, because sovereign immunity could shield Defendants from liability if a contractual dispute arose. (Compl. 7–8; *see also* Mot. for Partial Summ. J. 2–3 [ECF No. 27].)

[10] Federal Defendants allege that Plaintiffs' Memorandum in opposition to their Motion to Dismiss was untimely. (Defs.' Reply Br. 1 [ECF No. 41].) They argue that in the Roseboro Notice issued on January 15, 2014 [ECF No. 30], Plaintiffs were given fourteen (14) days in which to file a response, making it due no later than January 29, 2014. This argument, however, appears to ignore the "mail rule," Fed. R. Civ.

[ECF No. 39]. Plaintiffs filed a Reply to Federal Defendants' Response in Opposition to Partial Summary Judgment on February 5, 2014 [ECF No. 40]. Federal Defendants filed a Reply Brief to Plaintiff's Response to their Motion to Dismiss on February 10, 2014 [ECF No. 41]. On February 25, 2014, I heard oral arguments from all parties on the three motions before the Court. After thorough briefing, the matter is now ripe for decision.

## STANDARD OF REVIEW

As a preliminary matter, *pro se* complaints must be construed liberally, imposing "less stringent standards than the formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Federal Rules of Civil Procedure mirror many of the same concerns, and require pleadings to be "construed so as to do justice." Fed. R. Civ. P. 8(e). To the extent possible, I must therefore look beyond the form of Plaintiffs' Complaint, and evaluate its claims on the basis of their substance. Regardless of how inartfully pleaded it may be, Plaintiffs should not be penalized for the form or inelegance of their Complaint. I cannot, however, act as Plaintiffs' attorney. *See Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."). Although I may liberally construe the factual allegations in the Complaint, I must apply the proper legal standard in testing the allegations.

### I.     Rule 12(b)(1) Motion to Dismiss

Federal Defendants, in part, move to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). When a defendant presents other defenses in addition to challenging the subject matter jurisdiction of the court, the question of subject matter jurisdiction must be resolved first. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999).

P. 6(d), which adds 3 days to the time period when service is made pursuant to Rule 5(b)(2)(C), (D), (E), or (F). Adjusting the clock to take into account the mail rule, Plaintiffs' response was due no later than February 3, 2014, which is the date it was filed. Accordingly, Plaintiffs' Memorandum was timely.

Plaintiffs bear the burden of proving subject matter jurisdiction by a preponderance of the evidence. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

In contrast to "the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder," when a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the court "weighs the evidence to determine its jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (internal citations omitted). The court accepts all well-pleaded factual allegations as true, but is not obligated to accept a plaintiff's legal arguments or conclusions. *Glenn v. Lafon*, 427 F. Supp. 2d 675, 677 (W.D. Va. 2006) (citing *Jenkins v. McKeithen*, 395 U.S. 411 (1969); *Falwell v. City of Lynchburg*, 198 F. Supp. 2d 765, 771–72 (W.D. Va. 2002)).

When considering subject matter jurisdiction under Rule 12(b)(1), the court "regard[s] the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond R.R. Co.*, 945 F.2d at 768). In such a case, the court applies the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Glenn*, 427 F. Supp. 2d at 677 (citing *Richmond R.R. Co.*, 945 F.2d at 768). A complaint will be dismissed for lack of subject matter jurisdiction only if a plaintiff can prove no set of facts in support of his claim which would entitle him to federal subject matter jurisdiction, and the moving party is entitled to prevail as a matter of law. *Glenn*, 427 F. Supp. 2d at 677; *Richmond R.R. Co.*, 945 F.2d at 768 (internal citations omitted).

## II.     Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The standard of plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In determining facial plausibility, I must accept all factual allegations contained in the complaint as true. *Id.* The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). The complaint must therefore "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.     Rule 56 Motion for Partial Summary Judgment

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment on a claim or defense as a matter of law. Fed. R. Civ. P.

56(a); *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks and citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Anderson*, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. *Anderson*, 477 U.S. at 248.

Insofar as there is a "genuine" dispute about the facts, those facts are taken in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. *Anderson*, 477 U.S. at 249. "[S]ummary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

Plaintiffs have adopted a "kitchen sink" approach to litigation, but in essence the Complaint argues that negligence and deliberate misconduct were so prevalent throughout the FSA loan application process that it amounts to a deprivation of constitutional due process. To buttress this theory, Plaintiffs accuse Federal Defendants and Defendant Johnson of negligence, fraud, fraudulent misrepresentation, conspiracy, racketeering, and violation of the Fair Credit Reporting Act ("FCRA"). In addition to their constitutional claims, Plaintiffs seek judicial

review of the final agency decision of the USDA. While Plaintiffs have provided a great deal of information, there is a general lack of clarity with respect to the assignment of claims against particular parties.

Accordingly, I construe Plaintiffs' claims as follows: (1) constitutional tort claims against Federal Defendants pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); (2) constitutional tort claims against Defendant Johnson pursuant to 42 U.S.C. § 1983; (3) assorted statutory and tort claims against Federal Defendants; (4) assorted statutory and tort claims against Defendant Johnson; and (5) a request for judicial review of the final agency decision pursuant to the Administrative Procedures Act ("APA").[11] I assume that Plaintiffs are suing all parties, except the USDA, in both their individual and official capacities.[12] Plaintiffs primarily seek money damages, but also request two forms of equitable relief: (1) that the Court require Federal Defendants to "create and provide a complete and comprehensive guide for appellant rights;" and (2) require Federal Defendants to "prosecute to the fullest extent of the law Ronald A. Kraszewski for perjury." (Compl. 22–23.)

A court facing a 12(b)(6) motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, I first note that Plaintiffs cannot prevail in

---

[11] In addition, Plaintiffs raise several claims and requests for equitable relief for the first time in later responsive pleadings. For example, after Defendant Johnson filed her Motion to Dismiss, Plaintiffs included in their response an allegation that Defendant Johnson was also liable for negligent infliction of emotional distress. (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Wanda Johnson 10 [ECF No. 22].) Outside of an amended complaint, such extraneous allegations are improper and will not be considered. *See Presley v. South Carolina*, No. 8:13–cv–952–RMG, 2013 WL 6193361, at *3 (D.S.C. Nov. 26, 2013) ("[F]or purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.") (citing *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985)).

[12] Plaintiffs fail to specify in the Complaint, but emphasize in later responsive pleadings that it was their intent to sue all parties in their individual and official capacities. (*See, e.g.*, Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Wanda Johnson 18, 21 [ECF No. 22]; Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 9, 15–16 [ECF No. 38].)

their effort to obtain money damages on behalf of five individuals who are neither before the Court, nor parties to the current action. *See Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Further, attorney's fees are not available for self-representation. *See, e.g.*, *Kay v. Ehrler*, 499 U.S. 432, 433–38 (1991) (holding that even an attorney who represented himself in a successful civil rights case could not recover attorney's fees under 42 U.S.C. § 1988).

Further, Plaintiffs fail to allege any adequate basis for the provision of equitable relief. They fail to identify any specific injury that will be redressed if the Court orders Federal Defendants to develop a comprehensive guide to appellants' rights.[13] Moreover, their request that I order the prosecution of Ronald Kraszewski for perjury would violate constitutional separation of powers.[14] Accordingly, I will confine the discussion to Plaintiffs' claims for money damages and their request for judicial review of the agency decision.

Ultimately, as discussed in Parts I–VI *infra*, Plaintiffs fail to state a claim for denial of procedural or substantive due process. The Eleventh Amendment entitles Defendant Johnson to immunity from suit for damages claims in her official capacity. Sovereign immunity entitles the USDA and individual Federal Defendants to immunity from suit for damages claims in their official capacities. Plaintiffs fail to allege that the individual Federal Defendants violated any clearly established statutory or constitutional rights, or otherwise acted outside of the scope of their employment. Accordingly, the individual Federal Defendants are entitled to qualified

---

[13] A plaintiff has Article III standing to seek injunctive or declaratory relief only if they demonstrate a likelihood of suffering the same injury in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111–13 (1983).

[14] Such an order would violate the constitutional structure by usurping executive authority. *See* U.S. Const. art. II, § 3 (The President "shall take care that the laws be faithfully executed . . . .").

immunity in their individual capacities. The request for judicial review of the final agency decision survives dismissal. Plaintiffs fail to establish that they are entitled to partial summary judgment.

## I.      Sovereign Immunity and the Eleventh Amendment

Plaintiffs bring claims against the USDA, individual Federal Defendants, and Defendant Johnson in their official capacities. If these claims are prohibited by the doctrine of sovereign immunity and the Eleventh Amendment, however, this Court is without jurisdiction to entertain them. Sovereign immunity is jurisdictional in nature; "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The same is true with respect to the Eleventh Amendment; "although a case may arise under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a [state without] her consent, by one of her own citizens." *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322 (1934) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

### A.   U.S. Department of Agriculture

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242, 244 (1940)). With respect to allegations against the USDA, Plaintiffs' claims fall into one of two categories: (1) tort claims against the USDA; or (2) a request for judicial review of the final agency decision. As a result, two corresponding waivers of sovereign immunity are potentially relevant: (1) the Federal Tort Claims Act; and (2) the Administrative Procedures Act.[15]

---

[15] Plaintiffs' claims under the Administrative Procedures Act are discussed in Part V *infra*.

Under the Federal Tort Claims Act ("FTCA"), federal courts are authorized to hear suits against the United States for damages arising from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," so long as the wrongful conduct would violate the law where it occurred. 28 U.S.C. §§ 1346(b), 2674 (2013). Although the FTCA constitutes a limited waiver of sovereign immunity and might generally facilitate the types of claims which Plaintiffs assert, Plaintiffs nevertheless fail to state a claim under the rubric of the FTCA.

First, Plaintiffs not only fail to invoke the FTCA in the Complaint, but actively *reject* its application to their case in subsequent pleadings. In response to Federal Defendants' Motion to Dismiss, Plaintiffs argue that they "did not file this action as a suit[] for negligence under the Federal Tort Claims [Act]," and "consequently, its provisions should have no bearing on jurisdiction in this action." (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 16 [ECF No. 38].) Of course, as masters of their claims, Plaintiffs may reject the FTCA as a jurisdictional basis.[16] Without supplying an alternative waiver of sovereign immunity, however, Plaintiffs leave the Court without jurisdiction to hear these claims.

Further, even if they had invoked the FTCA, Plaintiffs fail to comply with a number of statutory requirements. First, Plaintiffs fail to plead a specific theory of liability with respect to the USDA.[17] Second, to the extent Plaintiffs raise claims which might be cognizable under the

---

[16] *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon."); *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

[17] The Complaint does not offer a particular theory of liability with respect to the agency itself, beyond generally alleging negligence, misconduct, and a lack of training and education on the part of its agents and employees. Without a specific theory of liability, the Complaint necessarily fails to "state a claim to

FTCA, the United States is the only proper defendant. 28 U.S.C. §§ 2679(a), (b); *Iodice v. United States*, 289 F.3d 270, 273 n.1 (4th Cir. 2002); *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) ("Failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction."). Third, the FTCA requires that a plaintiff formally present an administrative claim to the agency, in writing, prior to filing suit. 28 U.S.C. § 2675. Failure to exhaust administrative remedies deprives the Court of subject matter jurisdiction, *see McNeil v. United States*, 508 U.S. 106 (1993), and Plaintiffs acknowledge that they fail to satisfy this requirement. (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 17 [ECF No. 38].) Accordingly, all claims against the USDA for money damages are dismissed for lack of subject matter jurisdiction.

### B. Individual Federal Defendants

In addition to allegations against the USDA as an agency, Plaintiffs raise claims against seven federal employees in both their official and individual capacities. A suit against a government official in their *official* capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," and as long as the entity receives "notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations and internal quotation marks omitted).

As discussed above, Plaintiffs fail to identify any waiver of sovereign immunity that would allow them to sue the individual Federal Defendants in their official capacities for actions

---

relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, there is no *Bivens* cause of action against federal agencies. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *Cioca v. Rumsfeld*, 720 F.3d 505, 510 (4th Cir. 2013); *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). If Plaintiffs claim that their constitutional rights were violated by the conduct of a federal employee, a *Bivens* action against the individual federal employee, rather than the agency itself, is the appropriate avenue for redress. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395–97 (1971).

taken within the scope of their employment. An official-capacity suit against employees of a federal agency is no different than a suit against the agency itself, and in the absence of a waiver, "sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). Accordingly, all claims for money damages against Federal Defendants in their official capacities are dismissed for lack of jurisdiction.

### C. State Defendant Johnson

As the sole *state* government employee-defendant, Defendant Johnson argues that the official-capacity claims against her are prohibited by the Eleventh Amendment and the doctrine of sovereign immunity. (Mot. to Dismiss 5 [ECF No. 16].) Reflecting broad principles of sovereign immunity, the Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI; *see Alden v. Maine*, 527 U.S. 706, 712–13 (1999). Although the text of the Amendment explicitly prohibits suits "by citizens of another state," the Supreme Court has made clear that "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). "The ultimate guarantee of the Eleventh Amendment is that non-consenting states may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citation omitted).

Beyond the state itself, sovereign immunity under the Eleventh Amendment extends to "state agents and state instrumentalities." *Lee-Thomas*, 666 F.3d at 248 (quoting *Regents of the*

*Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  Defendant Johnson characterizes herself as an "employee of Virginia," a characterization that Plaintiffs have not challenged.  (Mot. to Dismiss 5 [ECF No. 16].)  As the Supreme Court has instructed, "[s]uits against state officials in their official capacity . . . should be treated as suits against the State."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal citations omitted).  As a result, Plaintiffs must identify some exception to the Eleventh Amendment in order to proceed with their claims against Defendant Johnson.

There are three recognized exceptions to the Eleventh Amendment.  *Lee-Thomas*, 666 F.3d at 249.  First, Congress may abrogate state sovereign immunity under certain limited circumstances.  *See Garrett*, 531 U.S. at 363 (citations omitted).  Second, a state can waive its Eleventh Amendment immunity.  *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).  Third, under the principles of *Ex Parte Young*, "the Eleventh Amendment permits suit for prospective injunctive relief against state officials acting in violation of federal law."  *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Plaintiffs fail to provide any evidence of waiver or congressional abrogation, and the Complaint makes no mention of injunctive relief with respect to Defendant Johnson.  Instead, Plaintiffs request purely retrospective relief in the form of money damages.  (*See* Compl. 20–23.)  In order to determine whether a suit is permissible under *Ex Parte Young*, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Va. Office of Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

At all times relevant to litigation, Defendant Johnson was acting within the scope of her employment. After their difficulties obtaining VAMP mediation, Plaintiffs were subsequently able to obtain mediation through NCAMP. They have no further need for mediation; the relief sought with respect to Defendant Johnson is purely retrospective. "Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity." *Hawkins*, 540 U.S. at 437 (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). Accordingly, all claims against Defendant Johnson in her official capacity are dismissed for lack of subject matter jurisdiction.

## II. Constitutional Tort Claims

Plaintiffs allege that Federal Defendants and Defendant Johnson violated their civil and constitutional rights. Although Plaintiffs are often unclear with respect to *which* rights were allegedly violated, they primarily invoke their right to due process. Plaintiffs also argue that they received discriminatory treatment at the hands of the USDA, but fall short of an Equal Protection claim.[18] Plaintiffs do not allege any other violations of the Constitution. Accordingly, I will construe Plaintiffs' constitutional tort claims as claims for denial of procedural and/or substantive due process.

### A. Procedural Due Process

In order to establish a violation of procedural due process, Plaintiffs must show that: (1) they had a property interest, (2) of which the Government deprived them, (3) without due process of law. *United States v. Hicks*, 438 Fed. App'x 216, 218 (4th Cir. 2011) (per curiam)

---

[18] Plaintiffs seem to concede that they are not members of any constitutionally protected class, and have not alleged that their loan application was treated differently from others who were similarly situated. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Accordingly, Plaintiffs raise no valid claims under the Equal Protection Clause.

(citing *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322 (4th Cir. 2005)). Procedural due process requires, at a minimum, fair notice and an opportunity to be heard. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Further, a violation of procedural due process "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). There is no violation of procedural due process where a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Plaintiffs fail to state a claim for deprivation of procedural due process for several reasons. First, Plaintiffs fail to demonstrate the existence of a legitimate property interest, and conflate their eligibility for a loan with an entitlement to the proceeds thereof. Filing a loan application does not confer any property interest in a future loan. *See, e.g.*, *Lyng v. Payne*, 476 U.S. 926, 942 (1986) ("We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment."); *Sindoni v. Young*, No. 95-1205, 1995 WL 555554, at *2 (4th Cir. Sept. 20, 1995) (per curiam) (unpublished) ("The filing of a request for an emergency loan under the [Farmers Home Administration] does not 'confer a property interest protected by the due process clause of the Fifth Amendment.' . . . Applicants have no entitlement to such loan proceeds; thus no property interest."); *Martin v. Marriner*, 904 F.2d 120, 121 (1st Cir. 1990) (per curiam).

Second, Plaintiffs fail in their claim that 7 C.F.R. § 780.6 establishes a "liberty interest" in mediation that can sustain a claim for denial of procedural due process. Section 780.6, which provides a list of procedures that are "available" when a decision is appealable, contains no

mandatory language and creates no private cause of action. A similar line of reasoning was rejected by the Eighth Circuit, which noted:

> [W]hile the various statutory and regulatory provisions . . . entitled [plaintiffs] to apply for [Farmers Home Administration] loans and establish a regulatory procedure for processing and reviewing loan applications, these provisions do not transform . . . unilateral hope, desire, or abstract need for a FmHA loan into a legitimate claim of entitlement to the loan itself. Thus, these provisions create no property interest on which [plaintiffs'] constitutional tort claim may properly be based.

*DeJournett v. Block*, 799 F.2d 430, 432 (8th Cir. 1986) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Third, even if the USDA had deprived them of a legitimate property or liberty interest, Plaintiffs would still be unable to satisfy their burden of establishing that the relevant loan procedures were unconstitutional. In *Matthews v. Eldridge*, 424 U.S. 319, 334–35 (1976), the Supreme Court established a three-part balancing test for considering whether a governmental deprivation of a protected property or liberty interest violates due process. The Court stated that the following three considerations must be weighed:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335; *see also Bradley v. Colonial Mental Health and Retardation Services Bd.*, 856 F.2d 703, 709 (4th Cir. 1988). This test reflects the idea that "due process is a flexible concept," which does not require that "procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error," and recognizes that "marginal gains from affording an additional procedural safeguard often may be outweighed by the societal

cost of providing such a safeguard." *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320–21 (1985).

Finally, a number of meaningful post-deprivation remedies were available after the denial of Plaintiffs' loan application. Plaintiffs availed themselves of state mediation, an NAD appeal hearing, and an NAD Director's Review of the hearing decision, all with notice and an opportunity to be heard. Even if Plaintiffs had a legitimate liberty or property interest that was implicated by the denial of their loan application, the available procedures were more than adequate to satisfy the demands of due process. Accordingly, Plaintiffs' claims for a violation of procedural due process are dismissed for failure to state a claim.

### B.  Substantive Due Process

Alternatively, Plaintiffs may intend to state a claim for a violation of substantive due process. In order to establish a violation of substantive due process, Plaintiffs must demonstrate: (1) that they had a fundamental liberty or property interest; (2) that the state deprived them of this interest; and (3) "that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995) (citing *Love*, 47 F.3d at 122) (emphasis in original).

"Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them." *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995) (internal citations and quotation marks omitted). The residual protections of substantive due process "run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of

adequate rectification by any post-deprivation state remedies." *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991). Substantive due process analysis must first begin by asking whether the conduct of the government official "shocks the contemporary conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998).

Plaintiffs' substantive due process claims suffer the same fatal flaw as their claims for procedural due process: Plaintiffs have no fundamental liberty or property interest in proceeds from the loan. *See, e.g.*, *Lyng v. Payne*, 476 U.S. 926, 942 (1986). Even if I accept, *arguendo*, Plaintiffs' argument that Federal Defendants and Defendant Johnson owed Plaintiffs a duty of care, and agree that they failed to exercise such care in the consideration of Plaintiffs' loan application, a lack of due care is insufficient to establish a deprivation of due process:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Daniels v. Williams*, 474 U.S. 327, 332 (1986). Accordingly, Plaintiffs' claims for a violation of substantive due process are dismissed for failure to state a claim.

## III.    Qualified Immunity

Defendant Johnson and the individual Federal Defendants argue that qualified immunity prohibits claims for money damages against them in their individual capacities. As a rule, "government official performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and protects "from bad guesses in gray areas

and ensures that they are liable only for transgressing bright lines." *Waterman v. Batton*, 393

F.3d 471, 476 (4th Cir. 2005) (citation and internal quotation marks omitted). Because qualified

immunity is "immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*,

472 U.S. 511, 526 (1985), a court should determine whether a defendant is entitled to qualified

immunity at the earliest possible stage. *Harris v. Hayter*, 970 F. Supp. 500, 503 (W.D. Va.

1997) (citing *Jackson*, 102 F.3d at 727).

In the Fourth Circuit, courts evaluating the merits of a qualified immunity defense must

first establish the "official status" of defendants invoking its protection. *See In re Allen*, 106

F.3d 582, 594 (4th Cir. 1997). *Allen* instructs that "an official may claim qualified immunity as

long as his actions are not clearly established to be beyond the boundaries of his discretionary

authority."[19] *Id.* at 593. The burden is on the defendant to "demonstrat[e] that the conduct of

which the plaintiff complains 'falls within the scope of the defendant's duties.'" *Id.* In order to

facilitate this analysis, the Fourth Circuit provides the following framework:

> [A] court must ask whether the act complained of, if done for a proper purpose,
> would be within, or reasonably related to, the outer perimeter of an official's
> discretionary duties. The scope of immunity "should be determined by the
> relation of the [injury] complained of to the duties entrusted to the officer." An
> official acts beyond the scope of his authority only if the injury occurred during
> the performance of an act clearly established to be outside of the limits of that
> authority.

*Id.* at 594 (internal citations omitted).

Plaintiffs argue that the individual Federal Defendants intentionally violated the USDA's

code of conduct, thereby removing themselves from the scope of their own authority. (Mem. of

Law in Opp'n to Defs.' Mot. to Dismiss 15–16 [ECF No. 38].) As the Fourth Circuit makes

---

[19] "Of course an official may still be liable for acts within his authority that violate clearly established law." *In re Allen*, 106 F.3d at 593 n.3 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

clear, however, this is not the proper focus of the inquiry.[20]  The relevant inquiry is *not*, as Plaintiffs argue, whether the individual Federal Defendants acted within the scope of their discretionary authority when they denied Plaintiffs' loan application for fraudulent or malicious purposes; rather, it is whether they acted within the scope of their discretionary authority when they denied the loan application.  It is "neither whether the official properly exercised his discretionary duties, nor whether he violated the law.  If these were the relevant inquiries, any illegal action would, by definition, fall outside the scope of an official's authority." *In re Allen*, 106 F.3d at 594 (citation omitted).

While each individual Federal Defendant played a slightly different role in the loan denial and subsequent appeals process, and the relevant inquiry focuses appropriately on the specific role of each, at no point have Plaintiffs argued that *any* Federal Defendant took any action which would be improper if done for a legitimate purpose.  Rather than an improper *act*, they allege that Federal Defendants engaged in a malicious conspiracy to act with an improper *purpose*.  I am mindful of the Fourth Circuit's guidance that "[t]he scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" *Id.* at 594 (citations omitted).  If Plaintiffs' alleged injury is the denial of a loan application, its relation to the duties entrusted to the officers is clear.  For these employees, the consideration (and occasional denial) of loan applications and appeals is the very *raison d'être*.  As a result, I

---

[20] In addition to the analytical framework, in *Allen* the Fourth Circuit provides two examples of courts that "properly focus[] upon the scope of the defendant's duties[.]" *In re Allen*, 106 F.3d at 594–95.  For example, in *Sims v. Metropolitan Dade County*, the Eleventh Circuit properly "inquired whether suspending an employee was within the scope of the supervisors' discretionary duties, *not*, as the plaintiff employee urged, whether suspending an employee *for exercising First Amendment rights* was within the scope of those supervisory duties." *Id.* (citing *Sims v. Metropolitan Dade County*, 972 F.2d 1230 (11th Cir. 1992)) (emphasis added).  Similarly, with respect to the matter that was before the court, the Fourth Circuit explained that the proper inquiry "is whether McGraw's action–forming his own "government agency" corporation under the auspices of the Attorney General's Office–was clearly established to be beyond the scope of his authority," and "*not* whether McGraw exceeded the scope of his authority by forming this corporation *in retaliation for speech critical of him*." *Id.* at 595 (second emphasis added).

- 25 -

find that the individual Federal Defendants were acting within the scope of their discretionary authority. Accordingly, insofar as their conduct conformed to clearly established law, the individual Federal Defendants are entitled to qualified immunity from suit for money damages in their individual capacities.

With respect to Defendant Johnson, the analysis is complicated by a lack of clarity in the pleadings. Plaintiffs argue that she is not entitled to qualified immunity because she was merely engaged in the "ministerial" function of handling mediation requests. (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Wanda Johnson 19 [ECF No. 22].) The precise nature of the alleged conduct, however, is not clear from the Complaint. Plaintiffs accuse Defendant Johnson of making fraudulent misrepresentations, but fail to specify what Defendant Johnson misrepresented.[21] They essentially allege that Defendant Johnson negligently allowed the USDA certification to lapse, and mishandled their request for mediation. Plaintiffs and Defendant Johnson also disagree about the relevance and application of the qualified immunity test announced in *James v. Jane*, 221 Va. 43 (1980).[22]

At this stage, however, a ruling on the merits of qualified immunity with respect to Defendant Johnson would be improvident. As discussed in Part II *supra*, Plaintiffs fail to state a claim for a violation of due process, and as discussed in Part IV *infra*, Plaintiffs fail to

---

[21] From the Complaint, I can only assume that Plaintiffs believe Defendant Johnson fraudulently misled them through her general implied representations that VAMP was a valid program. (*See* Compl. 4–6.)

[22] In her Motion to Dismiss, Defendant Johnson relies on federal precedent to argue that she has not violated any clearly established right, and is therefore entitled to qualified immunity. (Mot. to Dismiss 5–6 [ECF No. 16].) Plaintiffs, in turn, cite *James v. Jane* and contend that qualified immunity should be denied on the grounds that handling mediation requests is a ministerial function. (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Wanda Johnson 19 [ECF No. 22]) (citing *James v. Jane*, 221 Va. 43 (1980). In her Reply, Defendant Johnson argues that *James* applies only to negligence claims, and not to alleged constitutional violations. (Reply to Mem. of Law in Opp'n to Mot. to Dismiss 3 [ECF No. 26].) She maintains that Plaintiffs fail to state a negligence claim against her in the Complaint, but argues that even under the *James* test, she is entitled to qualified immunity. (*Id.* at 3–5.)

adequately plead any other claims against Defendant Johnson.  Accordingly, while I believe that Defendant Johnson is likely entitled to qualified immunity, I find it unnecessary to reach the merits of such a claim.

## IV.    Negligence, Intentional Torts, and Statutory Tort Claims

Plaintiffs' claims, as discussed in Parts I and III *supra*, are barred by the doctrines of sovereign and qualified immunity.  Even if these claims were not barred, however, they would nevertheless fail for the reasons below.

### A.  *Negligence and Gross Negligence*

In order to state a claim for negligence under Virginia law, Plaintiffs must allege: (1) a legal duty on the part of the defendant; (2) breach of that duty; (3) that such breach was the proximate cause of the injury; and (4) resulting damage to the plaintiff.  *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006) (internal citation omitted).  Plaintiffs claim that Federal Defendants and Defendant Johnson were negligent in a number of ways.

With respect to Federal Defendants, Plaintiffs first allege that it was negligent for FSA Deputy Administrator Chris P. Beyerhelm to approve what they characterize as an overly confusing rule with grammatical errors (which they argue was a cause of their loan denial), and to allow it to be included in the FSA regulations for over a year.  (Compl. 12.)  They claim that it was negligent to not require FSA employees to cite regulations in full, without alteration, when communicating with loan applicants in writing.  (*Id.* at 12, 17–18.)  Plaintiffs also allege that it was negligent for the FSA to direct them to a state mediation program which was no longer certified, and for having insufficient procedures in place to deal with a state mediation program that loses USDA certification.  (*Id.* at 4–6, 11–12.)

With respect to the FOIA requests, Plaintiffs claim that "in some cases [they were] provided with inaccurate information, no information, or information which indicated negligence . . . ." (*Id.* at 11.) They allege that the lack of response to an element of their FOIA request, the request for documentation of agency procedures for preparation of a loan denial letter, was either "negligent or malicious since such documentation did exist." (*Id.* at 12.) Plaintiffs do not offer any evidence to support their claim that further responsive documents exist and were withheld.

With respect to Defendant Johnson, Plaintiffs claim that it was negligent to allow the USDA certification of VAMP to lapse, and to not have adequate procedures in place to track mediation requests. (*Id.* at 16.) According to Plaintiffs, Defendant Johnson's alleged negligence prevented them from obtaining mediation from December 2012 to January 2013. (*Id.* at 4–8.) In addition, Plaintiffs repeatedly claim that the individual Federal Defendants and Defendant Johnson lack the training and education that are commensurate with their levels of responsibility.[23] Plaintiffs fail to indicate a specific theory of liability or highlight any particular deficiencies in their training that might be addressed through an order of the Court.

Despite the extraordinary breadth of their allegations, Plaintiffs fail to state adequately any claims of negligence. "All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward v. Holland Family Properties, LLC*, 284 Va. 282, 286 (2012) (citation omitted). In the Complaint, Plaintiffs fail to allege any duty owed

---

[23] For example, Plaintiffs accuse "USDA et al" of falsely stating during the NAD appeal hearing that Plaintiffs requested to pay living expenses with loan proceeds, and claim that this is evidence of a lack of education. (Compl. 10.) From the résumés and training histories Plaintiffs obtained concerning Farm Loan Manager Kraszewski and Farm Loan Officer Rigney, Plaintiffs allege a general lack of education and training that constitutes negligence. (*Id.* at 12.) Without specifying, Plaintiffs allege "other additional material misrepresentations of fact attributable to 'USDA et al'(s) lack of educational and program training," and accuse "USDA et al" personnel of not having the appropriate training to "discern the difference between labor cost and living expenses . . . ." (*Id.* at 12, 17.) Plaintiffs make a number of similar allegations in other responsive pleadings.

to them on the part of Defendant Johnson or any Federal Defendant. After Defendant Johnson filed her Motion to Dismiss, Plaintiffs replied that "[i]t's Res Ipsa Loquitur . . . [t]hat an employee of a State University with the title of University of Virginia State Mediation Program Director and prescribed as the appropriate contact by an agency of the U.S.D.A. has a duty of Due Care to handle mediation request[s]." (Mem. of Law in Opp'n to Def.'s Mot. to Dismiss Wanda Johnson 5 [ECF No. 22].) In their response to Federal Defendants' Motion to Dismiss, Plaintiffs argue that duties are "defined by the Agencies [sic] own process handbooks." (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 15 [ECF No. 38].)

"The issue whether a legal duty in tort exists is a pure question of law." *Kellermann v. McDonough*, 278 Va. 478, 487 (2009). As a question of law, therefore, I have no obligation to accept conclusions that such a duty exists. I find that Plaintiffs' reliance on the doctrine of res ipsa loquitur is misplaced.[24] Further, the existence of a handbook, or even a statute, directing the performance of an employee is not necessarily sufficient to establish a duty per se. "The standard of care required to comply with the duty of care may be established by the common law or statute. However, a statute setting the standard of care does not create the duty of care." *Steward*, 284 Va. at 286 (citations omitted). While it would be inaccurate to say that Federal Defendants and Defendant Johnson owe Plaintiffs *no* duty of care,[25] Plaintiffs fail to establish

---

[24] Generally speaking, the doctrine of res ipsa loquitur applies in negligence cases where "the instrumentality which caused an injury is within the exclusive possession and control of the person charged with negligence, and such person has, or should have, exclusive knowledge of the way that instrumentality was used, and the injury would not ordinarily have occurred if it had been properly used." *Danville Cmty. Hosp. v. Thompson*, 186 Va. 746, 757–58 (1947). While the doctrine may be applied to overcome the *factual* absence of evidence, it has no bearing on the *legal* question of duty.

[25] An individual has a general duty of care under the law to act in the manner any ordinary, prudent and reasonable person would do under similar circumstances. *See, e.g.*, *Norfolk & W. Ry. Co. v. Mace*, 151 Va. 458, 465 (1928). This duty of care, however, is only owed to foreseeable plaintiffs a defendant reasonably believed would be harmed by its action. *See Palsgraf v. Long Island Railroad*, 248 N.Y. 339 (1928).

that Federal Defendants and Defendant Johnson owe them any particular duty of care by virtue of Plaintiffs' status as loan applicants.

Even if I accept, *arguendo*, that such a duty exists, Plaintiffs' claims nevertheless fail for lack of proximate causation and resulting injury. "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006) (quoting *Beale v. Jones*, 210 Va. 519, 522 (1970)). In addition, "evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out." *Id.*

Beyond the two-month delay in obtaining mediation,[26] Plaintiffs fail to specify any injury that resulted from the alleged negligence. Presumably, the denial of the loan application itself is the alleged injury. Even if nearly everyone involved was careless in the discharge of their responsibilities, however, the reasoning of the agency's decision would nevertheless still support the denial of their loan application.[27] Any other damages that Plaintiffs claim resulted from the mishandling of their loan application are too remote and speculative to have been proximately caused by the alleged conduct. Plaintiffs fail to advance the question of causation beyond mere speculation and into the realm of legitimate inference. As a result, without adequately pleading a legal duty, breach of that duty, proximate causation, and resulting injury, Plaintiffs fail to establish the prima facie elements of a cause of action for negligence.

---

[26] The two-month delay is insufficient to establish a legal injury. Plaintiffs were never entitled to advance through mediation or the administrative process at a faster pace, and therefore cannot be "injured," in the legal sense of the word, by such a delay.

[27] This is not to say that I necessarily find the underlying reasoning of the agency to be correct, but rather that the reasoning (the loan was for an ineligible purpose) would still apply with equal force in the event that agency personnel negligently handled Plaintiffs' loan application.

There are three degrees of negligence in Virginia: (1) ordinary or simple; (2) gross; and (3) willful, wanton, and reckless. *Griffin v. Shively*, 227 Va. 317, 321 (1984). Gross negligence is "that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of [another]. It must be such a degree of negligence as would shock fair minded men although something less than willful recklessness." *Id.* (internal citations omitted). While Defendant Johnson argues that Plaintiffs fail to allege gross negligence in the Complaint, (Reply to Mem. of Law in Opp'n to Mot. to Dismiss 5 [ECF No. 26]), in any event the outcome is the same. If Plaintiffs fail to state a claim for negligence, an alternative claim for gross negligence necessarily fails as well. Accordingly, Plaintiffs' claims of negligence and gross negligence are dismissed for failure to state a claim.

### B. Actual Fraud, Constructive Fraud, Fraudulent Misrepresentation

In order to sustain a claim of actual fraud, constructive fraud, or fraudulent misrepresentation under the law of Virginia, a plaintiff is required to plead: (1) a false representation of material fact; (2) made intentionally (for actual fraud), or negligently (for constructive fraud); (3) reliance on that false representation to their detriment; and (4) resulting damage. *Klaiber v. Freemason Assocs.*, 266 Va. 478, 485 (2003). Pursuant to Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

With respect to Federal Defendants, Plaintiffs claim that the initial loan denial letter contained misrepresentations of fact and fraudulent citations to the Code of Federal Regulations and other guidelines. (Compl. 4; Ex. A.) The basis for their claim of fraud is essentially that USDA personnel paraphrased the regulations, which Plaintiffs argue was a deliberate attempt to

mislead them.  (*Id.* Exs. A, B.)  They characterize other statements in the letter–that Plaintiffs intended to use loan funds to refinance an existing loan, and had requested living expenses under the guise of labor costs–as misrepresentations of fact.[28]  (*Id.* at 4, 17.)    Plaintiffs claim that the letter was an intentional effort to deceive and defraud them, and allege mail fraud on the grounds that the letter was sent via certified U.S. mail.  (*Id.* at 4.)  In addition to the denial letter, Plaintiffs accuse NAD Director Roger Klurfeld of making material misrepresentations of fact in connection with the NAD Director's Review of their case.  (*Id.* at 14–15.)  In support of their claim, Plaintiffs argue that Director Klurfeld misstated a portion of their argument on appeal in his Director's Review decision.  (*Id.* at 14.)

Plaintiffs also allege that the FSA required a fee of $20.25 for a credit report as part of the loan application.  (*Id.* at 5, 7, 23.)  They claim that a credit report was never obtained, and argue that the agency therefore fraudulently accepted payment for services not rendered.  (*Id.* at 7.)   Additionally, as part of the NCAMP mediation process, Plaintiffs signed a mediation agreement and confidentiality statement.  (*Id.* at 7–8.)  Plaintiffs claim to have only learned after mediation that USDA personnel may have sovereign immunity, and argue that as a result, the agreements are the product of fraudulent inducement.  (*Id.*)

With respect to Defendant Johnson, Plaintiffs generally accuse her of making fraudulent and/or negligent misrepresentations, presumably concerning the status of VAMP mediation.  (*Id.* at 4–6.)  Plaintiffs were unable to obtain mediation from December to January, and allege that this was the result of a conspiracy to defraud.  (*Id.* at 6.)  Defendant Johnson argues that she did not intentionally or negligently make any false representations; she only told Plaintiffs that they

---

[28] Plaintiffs claim that they never requested loan funds to refinance an existing loan, and argue that they had no outstanding debt at the time.  (Compl. 4, 17.)  The agency later withdrew this justification as a reason for the denial of the loan.  (*Id.* at 8.)  Plaintiffs claim that they requested labor costs, not living expenses.  (*Id.* at 16–17.)

would "*likely*" get mediation in Wytheville, Virginia, and was not aware of the loss of USDA certification at the time. (Mot. to Dismiss 7 [ECF No. 16].) She further argues that there was no detriment or resulting damages to Plaintiffs, as they were subsequently able to obtain mediation through NCAMP. (*Id.*)

The majority of Plaintiffs' claims must fail for the simple reason that they fail to indicate precisely *which* material facts were allegedly misrepresented. Further, where Plaintiffs do specify the factual bases for their claims, they entirely neglect to plead "reliance on that false representation to their detriment." *Klaiber*, 266 Va. at 485. Given the heightened requirements for pleading fraud embodied in Rule 9(b), these failures alone are fatal to Plaintiffs' claims. Even if they had included the elements to otherwise make out a prima facie claim of fraud, however, Plaintiffs' claims would fail for lack of damages.[29]

With respect to the remaining miscellaneous allegations of fraud, Plaintiffs similarly fail to state a claim. Regarding the NCAMP mediation agreements, discussed further in Part VI *infra*, Plaintiffs falsely equate a unilateral mistake of law (their lack of knowledge concerning sovereign immunity) with a false representation by the USDA. I am aware that Plaintiffs lack the benefit of legal training and expertise; nevertheless, *ignorantia juris haud excusat* (ignorance of the law is no excuse). *See Clifton Mfg. Co. v. United States*, 76 F.2d 577, 579–80 (4th Cir. 1935). Further, even if Plaintiffs were able to identify a civil cause of action for mail fraud, without adequately alleging any fraud in the predicate loan denial letter, any claim for mail fraud necessarily fails as well.

---

[29] "An allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by allegation and proof of damage." *Community Bank v. Wright*, 221 Va. 172, 175 (1980) (citing *Lloyd v. Smith*, 150 Va. 132, 149 (1928)). Further, "the rule as to what constitutes damage [for fraud], in any case, may broadly be stated to be that there is no damage where the position of the complaining party is no worse than it would be had the alleged fraud not been committed." *Community Bank*, 221 Va. at 175 (quoting *Cooper v. Wesco Builders, Inc.*, 76 Idaho 278, 281 (1955)).

The $20.25 credit report fee, on the other hand, if considered as part of a single stand-alone transaction, presents a closer question. What this argument ignores, however, is the true nature of the fee. Plaintiffs did not pay $20.25 for a credit report. There was no expectation that Plaintiffs would necessarily receive a copy, and one was not even requested until their loan had been denied and Plaintiffs were engaged in mediation months later. Instead, the fee is more accurately characterized as a line-item expense contributing to an application fee for the loan. Plaintiffs paid $20.25 to submit their application for consideration, which is what they allege happened. Whether their loan application was *properly* denied is irrelevant; it is enough that the application was denied for reasons entirely removed and disconnected from Plaintiffs' credit report. Hence, Plaintiffs' position is "no worse than it would be had the alleged fraud not been committed," *Community Bank*, 221 Va. at 175 (quoting *Cooper*, 76 Idaho at 281), and Plaintiffs fail to adequately plead the alleged fraud.

Plaintiffs fail to plead the necessary elements of a claim for actual fraud, constructive fraud, or fraudulent misrepresentation. Even if I were to accept that Plaintiffs had alleged these elements, albeit in a cursory fashion, they fail to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Accordingly, Plaintiffs' claims of fraud and fraudulent misrepresentation are dismissed for failure to state a claim.

## C. Conspiracy

Under Virginia law, a cause of action for common law conspiracy requires: (1) two or more persons acting in concert; (2) for some unlawful purpose or for some lawful purpose by unlawful means; and (3) resulting damages. *Tomlin v. IBM*, No. CL–2011–8763, 2012 WL 7850902, at *13 (Va. Cir. Ct. Feb. 13, 2012) (citing *Country Vintner, Inc. v. Latour*, 272 Va. 402, 412 (2006)). In the Complaint, Plaintiffs allege two distinct claims of conspiracy. First, as

a result of their inability to obtain VAMP mediation, Plaintiffs allege that Defendant Johnson and "USDA et al" personnel engaged in a conspiracy to defraud. (Compl. 6.) Second, Plaintiffs claim that "USDA et al" conspired "to deny Plaintiff(s) rights in a Federal Farm Credit program," and "deny their constitutional rights in an effort to make plaintiff(s) suffer significant and emotional hardship . . . ." (*Id.* at 19.) Although these allegations are raised with almost no specificity, Plaintiffs insinuate that all of the individuals involved in the loan application and administrative review process were working together against them.

To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plausibility standard "asks for more than a sheer *possibility* that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). With respect to their claims of conspiracy, I find that Plaintiffs fail to plead sufficient factual content for the Court to draw any reasonable inference that Federal Defendants and/or Defendant Johnson are liable for conspiracy.

Plaintiffs' chief error is their failure to plead any form of concerted action. Plaintiffs argue that Defendant Johnson and Federal Defendants are "associated in fact," but fail to offer any factual support to buttress this unsubstantiated legal conclusion. (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 9 [ECF No. 38].) Plaintiffs fail to elaborate on the alleged association, or offer any other form of concerted action that might satisfy a necessary element of their claim. Without any facts to suggest that the alleged conspirators acted in concert—the *sine qua non* of a conspiracy—Plaintiffs fail to state a claim. In addition, with respect to the specific allegation of a conspiracy to defraud, Plaintiffs fail to plead the underlying fraud. Accordingly, Plaintiffs' claims of conspiracy are dismissed for failure to state a claim.

### D. Racketeering

In conjunction with their conspiracy allegations, Plaintiffs invoke the Racketeer Influenced and Corrupt Organizations ("RICO") Act. *See* 18 U.S.C. §§ 1961–1968. The Complaint alleges that the USDA has "abused [its] Government powers as a Racketeer Influenced Corrupt Organization to steal the constitutional rights of Plaintiff(s)," while "hiding behind sovereign immunity with the intent to deny Plaintiff(s) lawful access to the Farm Loan Program." (Compl. 19.) At oral argument, Federal Defendants summarized the RICO allegations contained in the Complaint as a single "throwaway line," a characterization that seems entirely accurate.

Pursuant to 18 U.S.C. § 1964(c), civil remedies are available when a plaintiff suffers an injury to his business or property as a result of a violation of 18 U.S.C. § 1962. *See Alley v. Angelone*, 962 F. Supp. 827, 832 (E.D. Va. 1997). In order to state a claim under § 1964(c), a plaintiff must plead *all* elements of the alleged violation of § 1962. *Id.* (citing *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496 (1985) (abrogated on other grounds)). Plaintiffs must therefore plead four (4) elements: (1) conduct (2) of an enterprise (3) through a *pattern* (4) of racketeering activity.[30] *Sedima*, 473 U.S. at 496 (emphasis added). Although the statute provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5), even *two* acts may be insufficient. *Sedima*, 473 U.S. at 496 n.14 ("The implication is that while two acts are necessary, they may not be sufficient."). As a result, "[f]or purposes of establishing a conspiracy for recovery under [§] 1964, plaintiffs must allege *with specificity* two or more predicate acts of racketeering within the meaning of [§] 1962." *Alley*, 962 F. Supp. at

---

[30] In relevant part, the statute provides that it shall be "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

832 (citing *Laterza v. American Broadcasting Co., Inc.*, 581 F. Supp. 408, 413 (S.D.N.Y. 1984)) (emphasis added).

Plaintiffs fail to include any of the necessary elements of a racketeering claim, and fail to plead *any* specific predicate acts of racketeering. In later responsive pleadings, Plaintiffs attempt to remedy this deficiency by alleging fraud pursuant to 18 U.S.C. § 1028, mail fraud pursuant to 18 U.S.C. § 1341, and obstruction of justice pursuant to 18 U.S.C. § 1503 as predicate racketeering offenses. (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 9–10 [ECF No. 38].) In addition to these elements not being alleged in the Complaint, I find that the statutes are either irrelevant, or Plaintiffs fail to state a claim for the alleged offense.[31] Without pleading any predicate acts of racketeering, Plaintiffs fail to make out even a prima facie claim to relief under 18 U.S.C. § 1964(c). Accordingly, all RICO allegations are dismissed for failure to state a claim.

In addition to the civil claims, Plaintiffs raise several other issues that implicate the RICO statute. First, Plaintiffs contend that this action is "of general public importance," as defined in 18 U.S.C. § 1966.[32] As the statute makes clear, however, such election is only available in civil actions instituted by the United States. Second, Plaintiffs attempt to defeat sovereign immunity by arguing that since "[C]ongress abrogated sovereign immunity in creation of the Federal Tort Claim A[ct,] so to[o] should that abrogation apply to [the RICO Act], as RICO was designed to augment existing civil and criminal remedies[.]" (Mem. of Law in Opp'n to Defs.' Mot. to

---

[31] 18 U.S.C. § 1028 addresses fraud as it relates to identification documents and authentication features, while 18 U.S.C. § 1503 prohibits influencing or injuring an officer or juror. Neither statute is relevant to the facts of this case. Further, as discussed in Section B of Part IV *supra*, Plaintiffs fail to state a claim for mail fraud.

[32] 18 U.S.C. § 1966 provides for the expedition of certain civil actions. It provides that "[i]n any civil action *instituted under this chapter by the United States* in any district court of the United States, the Attorney General may file with the clerk of such court a certificate stating that in his opinion the case is of general public importance." The chief judge or presiding district judge is then given a copy of the certificate, and "shall designate immediately a judge of that district to hear and determine action." 18 U.S.C. § 1966 (emphasis added).

Dismiss 15 [ECF No. 38].)  This argument also fails, as federal courts "must construe waivers [of sovereign immunity] strictly in favor of the sovereign . . . and not enlarge the waiver beyond what the language requires."  *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983); *McMahon v. United States*, 342 U.S. 25, 27 (1951); *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686 (1927)) (internal quotation marks omitted).

### E.  Fair Credit Reporting Act

Plaintiffs claim that Federal Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681v, by requesting and providing a *current* credit report, as opposed to one dating back to the time of their loan application, when Plaintiffs requested a copy of their credit report during NCAMP mediation.  (Compl. 7, 15–16.)  The FCRA provides a private cause of action to enforce certain provisions of the statute.  *See Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008).  Beyond their conclusion that it was unlawful, however, Plaintiffs fail to allege with any specificity how Federal Defendants violated the FCRA, or even which section(s) of the FCRA they allegedly violated.  Without any additional information, Plaintiffs fail to make out even a prima facie case for a violation of the FCRA.  Accordingly, Plaintiffs' FCRA claims are dismissed for failure to state a claim.

### F.  Constitutional Challenge to the FTCA

In their response to Federal Defendants' Motion to Dismiss, Plaintiffs assert that "[t]his motion for argument presents a constitutional challenge to the provisions of the FTCA as it conflicts with the provisions of Title 18 § 1964(c)."  (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 25 [ECF No. 38].) This argument is presented under the heading "One Small Historical Note," and no additional explanation is provided.  (*Id.* at 24–25.)  Without presenting any

argument in support of this assertion, Plaintiffs' alleged constitutional challenge is dismissed for failure to state a claim.

## V. Judicial Review of the Final Agency Decision

In addition to the civil tort claims discussed above, Plaintiffs request judicial review of the final decision of the USDA. (Compl. 19.) "Judicial review of final decisions of the NAD is to be in accordance with Chapter 7 of Title 5 of the United States Code." *Balfour Land Co., L.P. v. United States*, No. 7:08-cv-34, 2009 WL 1796068, at *4 (M.D. Ga. June 22, 2009) (citing 7 U.S.C. § 6999); *see also Beard v. Glickman*, 189 F. Supp. 2d 994, 998 (C.D. Cal. 2001). Through the Administrative Procedures Act ("APA"), Congress enacted a limited waiver of sovereign immunity to authorize judicial review of final agency actions for claims "seeking relief other than money damages." 5 U.S.C. § 702. With respect to form and venue, the law provides that such an action "may be brought against the United States, *the agency by its official title*, or the appropriate officer." 5 U.S.C. § 703 (emphasis added). As a consequence, with respect *only* to Plaintiffs' request for judicial review of the final NAD decision, and *only* to the extent such a claim is brought against the USDA as an agency, I find that Plaintiffs have identified an appropriate waiver of sovereign immunity.

Under the APA, "an agency's decision, including its action, findings and conclusions, should not be overturned unless it is unsupported by substantial evidence, or if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citing 5 U.S.C. § 706(2); *United States v. Snoring Relief Labs Inc.*, 210 F.3d 1081, 1085 (9th Cir. 2000)). A decision is arbitrary and capricious if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or

is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

In this context, courts "perform only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006) (citations and internal quotation marks omitted). "[T]he ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califino v. Sanders*, 430 U.S. 99, 105 (1977).

Plaintiffs allege a number of deficiencies in the administrative review process and final decision of NAD Director Roger Klurfeld. Primarily, Plaintiffs claim that the agency applied an incorrect standard to deny their loan application. Rather than the FSA regulations that were in effect when Plaintiffs applied for the loan, they argue that a version of the regulations from 2008, the year that Plaintiffs designed and began construction on the house, should apply instead.[33] Plaintiffs seem to concede that the home they proposed to complete with proceeds from the loan

---

[33] Plaintiffs contend that the prior version of Page 7-2, Para. 131 C should apply for two reasons. They argue that the rule previously required a dwelling to *either* meet family needs, *or* be modest in size, cost, and design. When the rule was changed in 2011, Plaintiffs contend, the "or" was amended to "and," but the "either" remained as a typo, which renders the rule "incomprehensible" in their view, since the clause contains no alternative. (Compl. 8.) In essence, the argument is similar to a "void-for-vagueness" challenge to the existing regulations. Further, Plaintiffs argue that since the rule controls the design of a dwelling, the agency should apply the rule in effect when their house was designed, and not when they applied for the loan. (*Id.*) These two arguments form the basis of Plaintiffs' claim that their house may not be modest, but is nevertheless permissible under the regulations, because "nothing could possibly have met the families' needs anymore than the welfare of this dwelling." (*Id.* at 8–9.)

is not a modest dwelling.[34]  This admission is significant, because from the initial loan denial letter to the final stages of NAD review, Plaintiffs were told that loan proceeds may only be used to purchase, improve, or build a dwelling if it "adequately meets family needs and is modest in size, cost, and design . . . ;" a restriction that their house was found to exceed.  (*See* Compl. Ex. A, at 1; Ex. AA, at 2–3.)  Plaintiffs maintain that the 2008 regulation should apply, and argue that it should be interpreted to require that the dwelling *either* adequately meet family needs *or* be modest in size, cost, and design.  (*Id.* at 8–9, 18.)

Plaintiffs also claim that NAD Director Roger Klurfeld misstated Plaintiffs' argument on appeal.  (*Id.* at 14.)  Plaintiffs allege that they argued that the rule (requiring dwellings to be modest) did not apply to them because it did not apply to existing dwellings; Director Klurfeld, Plaintiffs contend, misrepresented this argument, and stated that Plaintiffs had argued that the rule did not apply to them because the dwelling was not located on the farm.  (*Id.*)  Plaintiffs claim that they were denied the opportunity to argue that the proposed dwelling adequately meets their family needs.  (*Id.* at 14–15.)

Plaintiffs allege facts which tend to support a finding that the decision of NAD Director Klurfeld is a "final decision" for purposes of judicial review.  According to Plaintiffs, NAD Director Klurfeld's letter concluding his Director's Review stated that it "is a final order of the Department of Agriculture and concludes *all* administrative processing of your appeal."  (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 16–17 [ECF No. 38]) (emphasis in original).

---

[34] For example, in Plaintiffs' NAD appeal brief, attached to the Complaint as Exhibit Z, Plaintiffs argue that "[w]hile we would concede the dwelling may not meet FSA's definition of modest in size, cost, and design, it should be no more subject to the requirement than is a dwelling located close to the farm[.]" (Compl. Ex. Z, at 5.)  In the same brief, Plaintiffs claim to have "personally invested almost $600,000 in identifiable cost of my own capital into this project and community," and argue that they are receiving "prejudicial treatment simply because we tried to build our dream house on a farm . . . without first getting their approval."  (*Id.* Ex. Z, at 9.)

Plaintiffs also allege what amounts to a claim of futility with respective to administrative review.[35]

For these reasons, and in light of the liberal construction afforded to *pro se* pleadings, I find that Plaintiffs state a claim for judicial review of the final agency decision sufficient to survive Federal Defendants' Motion to Dismiss. Whether Plaintiffs are entitled to prevail is another matter, but at this stage of the proceedings, it would be premature to pass judgment on the merits of Plaintiffs' request.[36] In particular, the Court would benefit from additional argument concerning the following issues: (1) whether the USDA has rendered a final decision over which this Court has jurisdiction; (2) if so, are there any obstacles that would prevent the Court from engaging in judicial review pursuant to 5 U.S.C. § 706(2); and (3) if not, was the final decision of the agency, including its action, findings, and conclusions, unsupported by substantial evidence, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. Accordingly, Plaintiffs' request for judicial review of the final agency decision survives as an action against the USDA, and Federal Defendants' Motion to Dismiss will be denied.

## VI.    Plaintiffs' Motion for Partial Summary Judgment

Finally, Plaintiffs move for partial summary judgment with respect to paragraph 11 of the Complaint, dealing with the mediation agreement and confidentiality statement that they signed as part of the NCAMP mediation process. (Mot. for Partial Summ. J. [ECF No. 27].) Plaintiffs

---

[35] "Plaintiffs have met with fraud, negligence, obstruction of justice and apparent conspiracies of corruption at every proper venue of grievance. Should any different response be expected in the filing of an administrative claim . . . with a Racketeer Influenced Corrupt Organization?" (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 17 [ECF No. 38].)

[36] I note that the remaining issues are primarily legal in nature. With the benefit of additional argument, the Court is therefore willing to entertain a motion for summary judgment, pursuant to Fed. R. Civ. P. 56(a), if either party so chooses.

learned after mediation that USDA personnel may have sovereign immunity, and claim that the agreements were therefore based on fraudulent inducement. (*Id.* at 2) According to Plaintiffs, Federal Defendants "did not have capacity to enter into the agreement because they do not have legal authority to relinquish their sovereign immunity." (*Id.* at 3.) Plaintiffs equate the existence of sovereign immunity to a lack of consideration, and argue that it renders the agreements null and void. (*Id.*) Plaintiffs ask the Court to "find these agreements null and void relinquishing any and all responsibility of plaintiffs to keep confidential any information learned during mediation." (*Id.*)

Summary judgment is only appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment on a claim or defense as a matter of law. Fed. R. Civ. P. 56(a); *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 392 (4th Cir. 2009). Under Virginia law, a plaintiff asserting a cause of action for fraudulent inducement bears the burden of proving by clear and convincing evidence the following elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Persaud Companies, Inc. v. IBCS Group, Inc.*, 425 F. App'x 223, 226 (4th Cir. 2011) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143 (1994)). Plaintiffs, however, fail to allege any false representation, and arguably fail to plead even a single element of a claim for fraudulent inducement. Even if the law of North Carolina were to apply, Plaintiffs nevertheless fail to state a claim for fraudulent inducement.[37]

---

[37] Under the law of North Carolina, the essential elements of a claim for fraud in the inducement are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 678 S.E.2d 671, 684 (N.C. Ct. App. 2009) (quoting *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 418 S.E.2d 648, 658 (N.C. 1992)). Plaintiffs fail to allege the necessary elements of such a claim.

Plaintiffs' remaining claims—that Federal Defendants lack capacity, and that the agreements lack consideration—present novel arguments, which Plaintiffs are unable to support with even a single legal authority. A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal quotation marks and citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That a rational trier of fact would accept Plaintiffs' novel and largely unsubstantiated arguments is by no means certain. Accordingly, Plaintiffs fail to establish their entitlement to judgment as a matter of law, and the Motion for Partial Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendant Johnson's Motion to Dismiss is **GRANTED.** Plaintiffs' Motion for Partial Summary Judgment is **DENIED.** Federal Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Specifically, Federal Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiffs' request for judicial review of the final agency decision, and **GRANTED** with respect to all other claims against the USDA, and all claims against the following employee-defendants, in any capacity: (1) James Rigney; (2) Ronald Kraszewski; (3) J. Calvin Parrish; (4) Jerry L. King; (5) Roger Klurfeld; (6) Christopher P. Beyerhelm; and (7) Barbara McLean. The USDA remains as the sole defendant, and the suit will proceed as an action for judicial review of the final decision of NAD Director Roger Klurfeld.[38]

---

[38] Plaintiffs are advised that the remaining available remedies are limited to a reversal of the final decision of the administrative agency, *i.e.*, money damages and attorney's fees are not available moving forward.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to Plaintiffs and all counsel of record.

Entered this 24th day of March, 2014.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE