IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. JULIAN and<br>RENEE G. JULIAN, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | Civil Action No. 4:13-CV-00054 |
| v. | )<br>) | |
| THOMAS J. VILSACK,<br>SECRETARY OF AGRICULTURE<br>U.S. DEPARTMENT OF AGRICULTURE, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Thomas J. Vilsack, Secretary, United States Department of Agriculture (hereinafter "Defendant"), by counsel, and pursuant to Federal Rules of Civil Procedure 56, and moves this Court for summary judgment. This matter is properly before this Court as a review of the National Appeals Division ("NAD") Director's Review Determination, which must be sustained as Plaintiffs fail to demonstrate that the Agency's action was arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with the law or procedure.

## UNDISPUTED FACTS

On or around October 10, 2012, Plaintiffs, Christopher and Renee Julian, applied for a Farm Ownership Loan ("FO") with the U.S. Department of Agriculture, Farm Service Agency (FSA or Agency). *See* Administrative Record at 322; *see also* Complaint, Attachment A, Dkt. No. 3-1. On November 21, 2012, FSA issued a Notice of Complete Application informing Plaintiffs that their application was deemed completed as of November 19, 2012. *See*

1

Administrative Record at 56; *see also* Complaint, Attachment D, Dkt. No. 3-4, at 3.  On November 28, 2012, FSA issued a letter denying Plaintiffs' FO loan application on the basis that the proposed use of loan funds were for ineligible purposes.  *See* Administrative Record at 5; *see also* Complaint, Attachment A, Dkt. No. 3-1.  Specifically, in its Declination Letter, the Agency cited three reasons for denial: (1) Plaintiffs requested to use loan funds to pay for living expenses via paying oneself for labor; (2) the requested funds were to be used to complete construction of a large dwelling that was not essential to the farming operation and exceeded what was adequate to meet the family's needs; and (3) the requested funds were to make loan payments.  *See id.*  Thus, the Agency found that the requested purposes were ineligible under the Agency's regulations.  *See id.*   Additionally, in its letter, the Agency informed Plaintiffs of their appeal rights by either requesting reconsideration by the Farm Loan Manager, requesting mediation through the Virginia State Mediation program as part of FSA's informal appeal process, or appealing the determination to USDA's National Appeal Division.  *See* Administrative Record at 6.

By letter dated December 10, 2012, Plaintiffs requested mediation with the Virginia Agricultural Mediation Program with Virginia State University.  *See* Administrative Record at 15; *see also* Complaint, Attachment F, Dkt. No. 3-6.   Upon discovering that the mediation certification for the Virginia Agricultural Mediation Program with Virginia State University had been revoked, Plaintiffs requested mediation through the North Carolina Agricultural Mediation Program (NCAMP).  *See* Complaint at 6.  The parties could not reach an agreement at mediation, resulting in an impasse between the parties.  *See* Administrative Record at 22.

Subsequently, Plaintiffs filed an appeal with USDA's National Appeals Division.  *See* Administrative Record at 9.  During a pre-hearing conference with the Hearing Officer, the

2

Agency withdrew its third reason of denial, that the loan funds were requested to make loan payments.  *See* Administrative Record at 76.  Thus, the only issues before NAD were: (1) whether the request to use loan funds for living expenses was an eligible purpose under the regulations, and (2) whether the use of loan funds to conduct construction to Plaintiffs' dwelling exceeded what was adequate to meet the Plaintiffs' needs under the regulations.  *See* Administrative Record at 97; *see also* Complaint, Attachment AE.  In his Appeal Determination, the Hearing Officer did not uphold the Agency's reason for denial that the loan funds were requested for living expenses, and found that the request was for labor expenses.  *See* Administrative Record at 100.  Notwithstanding, the Hearing Officer found that the Agency correctly denied Plaintiffs' loan application, as Plaintiffs' dwelling was not modest in size, cost and design and exceeded the family needs under the Agency's regulations and Handbook provisions for FO funding.  *See id.*

On June 17, 2013, Plaintiffs requested a Director's Review of the NAD Appeal Determination.  *See* Administrative Record at 108.  On July 24, 2013, the Director of the National Appeals Division issued his Determination upholding the Appeal Determination.  *See* Administrative Record at 189; *see also* Complaint, Attachment AA.  The Director, in reviewing the NAD records, Agency regulations and the applicable Handbook provisions, found the Plaintiffs' interpretation of the Agency's Handbook to be too narrow, and the Agency was correct in finding that the home was not modest in size, design and cost and exceeded the family's needs.  *See id.* at 191.  Thus, the NAD Director upheld the Appeals Determination that Plaintiffs were ineligible to obtain FO loan funds.  *See id.*

## APPLICABLE STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "Material" facts are those which, under applicable substantive law, may affect the outcome of the case. *Id.* A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party cannot create a "genuine" issue of "material" fact simply by making assertions in its legal memoranda. *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.,* 690 F.2d 1235, 1238 (9th Cir. 1982).

The moving party bears the initial burden of demonstrating the absence of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Anderson*, 477 U.S. at 247. If the party seeking summary judgment bears the burden of proof on a particular issue at trial, he must produce evidence showing that no reasonable trier of fact could find against him. *See Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986). But if the party seeking summary judgment does not bear the burden of proof at trial, he need only point out that his opponent's case lacks essential evidentiary support. *See Celotex*, 477 U.S. at 323-25.

## STANDARD OF REVIEW

Judicial review of final decisions of the USDA National Appeals Division (NAD) is to be in accordance with the Administrative Procedures Act (APA) under Chapter 7 of Title 5 of the United States Code. *See Balfour Land Co., L.P. v. United States*, No. 7:08-cv-34 (HL), 2009 WL 1796068, at *4 (M.D. Ga. June 22, 2009). In reviewing a Motion for Summary Judgment based upon a decision rendered by a federal administrative agency, the District Court's scope of

review is limited and should afford great deference to the agency's action. *See id.* The reviewing court may not substitute its own judgment for that of the agency. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califino v. Sanders*, 430 U.S. 99, 105 (1977); *Beard v. Glickman*, 189 F. Supp. 2d 994, 998 (C.D. Cal. 2001). The APA states that an agency's decision, including its action, findings and conclusions, should not be overturned unless it is unsupported by substantial evidence, or it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See id.* A decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983). Where review involves the interpretation of an agency's regulation, the Court must "defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the regulation." *See Glickman*, 189 F. Supp. 2d at 998; *see also Kentuckians for the Commonwealth, Inc. v. Rivenburgh,* 317 F.3d 425, 439 (4th Cir. 2003). "We perform 'only the limited, albeit important, task of reviewing agency action to determine whether the agency conformed with controlling statutes,' and whether the agency has committed 'a clear error of judgment.'" *Holly Hill Farm Corp. v. United States*, 447 F.3d 258, 263 (4th Cir. 2006). Thus, an agency's actions are presumed correct and fair, and the plaintiff has the burden of overcoming that presumption. *See Citizens,* 401 U.S. at 415. In addition, as the administrative record provides the complete factual predicate for the court's review and the factual record is closed, the burden that a plaintiff faces on summary judgment is not "materially different from his ultimate burden on the merits." *See*

5

*Fener v. Hunt,* 971 F. Supp. 1025, 1031 (W.D. Va. 1997). Therefore, to survive summary judgment, "the plaintiff must point to facts in the administrative record-or to factual failings in that record-which can support his claims under the governing legal standard." *See Krichbaum v. Kelley,* 844 F. Supp. 1107, 1110 (W.D. Va. 1994).

## ARGUMENT

**I.    The NAD Director's Review Determination is a Final Determination by the Agency Subject to Judicial Review by This Court.**

Defendant concedes that the NAD Director's Review Determination is a final determination by the Agency that may be subjected to judicial review by this Court, in accordance with the Administrative Procedures Act under Chapter 7 of Title 5 of the United States Code.

NAD is an adjudicative appeals process established in 1994 to provide factual review of adverse decisions of certain USDA Agencies, including but not limited to FSA. *See Barger v. Johanns*, No. 4:04CV3268, 2006 WL 680889, at *2 n.3 (D. Neb. March 13, 2006) (citing 7 U.S.C. §§ 6991-6999 & Part 11 of Title 7 of the Code of Federal Regulations). Under the Code, a participant who receives an adverse decision may appeal to NAD for an evidentiary hearing by a Hearing Officer. *See* 7 U.S.C. § 6996. The regulations define "participant" as any individual or entity who has applied for a loan or other benefit in accordance with any program of an agency in which Part 11 of Title 7 of the Code of Federal Regulations applies and is affected by a decision of such agency. *See* 7 C.F.R. § 11.1. Once the Hearing Officer issues his determination, either party may request for the NAD Director to review and issue a determination on the Hearing Officer's decision, using the case record, the record from the evidentiary hearing, the request for review, and such other arguments or information as may be

6

accepted by the Director.  *See* 7 U.S.C. § 6998(b).  A Director's Determination shall be considered a final determination of the Division and shall be reviewable and enforceable by any United States District Court of competent jurisdiction in accordance with Chapter 7 of Title 5, United States Code.  *See* 7 U.S.C. § 6999; 7 C.F.R. § 11.13.

In this matter, it is uncontested that Plaintiffs fall within the purview of the NAD appeals process.  *See* 7 C.F.R. §11.3.  Further, Plaintiffs opted to participate in both the formal and informal hearing process outlined in the Agency's regulations.  *See* 7 C.F.R. §§11.5, 11.6(b), 11.9.  Plaintiffs requested an evidentiary hearing with a hearing officer and subsequently requested to have the NAD Director review the Appeal Determination.  *See* Administrative Record at 9, 108.  Once the NAD Director issued his Director's Review Determination, it was the intention of NAD for it to be the final order of the Agency, which is reviewable by this Court.  *See* Administrative Record at 188.

**II.     It was Congress' Intent to have the Agency Fill-In the Gap Contained in the Consolidated Farm and Rural Development Act, and the Agency's Reasonable Interpretation Should be Given Deference.**

Congress implicitly intended for the Agency to fill-in the gap in the Consolidated Farm and Rural Development Act of 1961 ("CFRDA" or the "Act"), 7 U.S.C. § 1921 *et seq.* (1987), which implements the Farm Ownership Loan Program, by not providing a definition for Capital Improvements within the statute and intended for the Agency to promulgate rules and regulations to administer this loan program.  As such, the Agency's reasonable interpretation of its regulations and Handbook provisions should be given deference.

The CFRDA authorizes the Farm Service Agency, formerly known as the Farmers Home Administration or FmHA, to make three types of conventional loans: real estate loans to acquire or improve farms (including farm buildings); operating loans to improve operations, purchase

7

livestock, and refinance existing debts; and emergency loans to extend agricultural credit to temporarily meet the needs of farmers and ranchers in areas affected by natural disaster. *See Hanson v. United States,* 13 Cl. Ct. 519, 525 (1987). Subchapter IV of the CFRDA provides for the implementation and administration of these loan programs by the Secretary of Agriculture. *See id.*; *see also* 7 U.S.C. § 1981(a). In administering the farm ownership loan program, the Secretary is authorized to make loans to farmers for the purposes outlined in § 1923 of the Act and who: (1) are U.S. citizens; (2) meet the requirements under § 1922 of the Act; (3) are unable to obtain credit elsewhere; (4) are owners or operators of small or family farms; (5) are farmers or ranchers with a low income; and (6) demonstrate a need to maximize their income from farming or ranching operations. *See* 7 U.S.C. § 1934(a). Section 1923 of the Act provides, in pertinent part, that a farmer or rancher may use a direct loan only for ". . . (B) making capital improvements to a farm or ranch." *See* 7 U.S.C. § 1923(a)(1)(B). The implementing regulations for the FO loan program further explains that FO loan funds may be used for "capital improvements to a farm owned by the applicant, for construction, purchase or improvement of farm dwellings, service buildings or other facilities and improvements essential to the farming operation." *See* 7 C.F.R. § 764.151(b). Neither the Act nor the implementing regulations clearly define "capital improvements" under the FO loan program; thus, the Agency filled in the gap on this issue by devising a handbook to provide guidance.

The FSA Handbook 3-FLP (Rev. 2) Amend. 4 (October 20, 2011) ("Handbook") provides guidance on the eligible uses of FO funds in making capital improvements. *See* FSA Handbook 3-FLP (Rev. 2) Amend. 4, Paragraph 131C. Specifically, the Handbook states:

8

> FO funds can be used to purchase, improve, or build any type of structure, including a dwelling that either adequately meets family needs and is modest in size, cost, and design, provided the structure is related to the farming enterprise. The dwelling shall be located on the farm when FO funds are used to purchase the dwelling. However, if the applicant already owns a dwelling located close to the farm, FO funds may be used to repair or improve the dwelling.

*See id*. Plaintiffs contend that the Handbook should be interpreted as stating that the requirement of adequately meeting a family's needs and being modest in size, cost and design is applicable only to dwellings located on a farm; however, the Agency has reasonably interpreted this requirement as applicable to dwellings both on and off a farm.

The framework for assessing the meaning contained in the Act is set forth in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984). *See Veneziano v. Grayer*, No. 1:07-CV-2047, 2008 WL 542638, at * 3 (N.D. Ga. Feb. 22, 2008). The Supreme Court, in *Chevron,* outlined a two-step process that courts must follow in determining whether to defer to an agency's interpretation of a statute. *See Chevron*, 467 U.S. at 842-43; *Arqule v. Kappos*, 793 F. Supp. 2d 214, 219 (D.D.C. 2011). Under step one, "the court examines the statute *de novo*, applying the traditional tools of statutory construction in order to discern whether Congress has spoken directly to the question at issue." *See id.* (citing *Chevron*, 467 U.S. at 842-43). If this "search for the plain meaning of the statute . . . yields a clear result, then Congress has expressed its intention as to the question, and deference is not appropriate." *Id.* If, however, the court determines Congress has not directly addressed the precise question at issue, then it moves to Step Two. *Id.* (citing *Chevron,* 467 U.S. at 843).

Under step two of *Chevron*, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Arqule*, 793 F. Supp. 2d at 219 (citing *Chevron,* 467 U.S. at 843). "If Congress has explicitly left a gap for the agency to fill, there is an

9

express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843-44. If the delegation of power to the agency is implicit, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

In this instance, Congress explicitly gave the Secretary of Agriculture the authority to administer the FO loan program, including, but not limited to, the promulgation of regulations for the program. Additionally, with that delegated authority, Congress implicitly authorized the Agency to make reasonable interpretations of the Act, regulations and handbooks administering the program. After review of all the records, statutes, regulations and handbooks, the NAD Director interpreted Paragraph 131C of the Handbook to require dwellings located on and off a farm to be adequate to meet a family's needs and to be modest in size, cost and design. *See* Administrative Record at 191. This interpretation is consonant with the legislative intent of the Act, which is evident in the language of the Act that requires the farmers receiving FO Funds to be "owners or operators of small or family farms." *See* 7 U.S.C. § 1934(a)(4). Further, courts have recognized that the objective of the Act is to aid the "underprivileged" farmer. *See Curry v. Block,* 541 F. Supp. 506, 511 (1982). Thus, requiring that FO funds can only be used to make improvements to those structures or dwellings that are "modest," whether located on or off a farm, and only improvements that would ensure that a family's needs are adequately met, is consonant with the legislative intent of the Act and should be given deference.

Additionally, the Agency's determination that Plaintiffs' dwelling exceeded the requirements of the Act is reasonable and should be upheld. During the hearing process, both parties were given the opportunity to present evidence. During the hearing, the Agency

presented evidence supporting its decision that the Plaintiffs' home exceeded the requirements of the regulations and handbook provisions. *See* Administrative Record at 200-14. To the contrary, Plaintiffs, during the hearing, conceded that their dwelling may not meet the definition in the Agency's regulations and failed to provide any evidence to refute the Agency's findings. *See* Administrative Record at 100.[1] Thus, based on the record, the Director's determination was reasonable, and cannot be said to be either unsupported by substantial evidence, or arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See Citizens to Preserve Overton Park*, 401 U.S. at 416; *Arqule*, 793 F. Supp. 2d at 219 (the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did and not to resolve factual issues.)

## CONCLUSION

For the foregoing reasons, and on the basis of the record in this case, the Defendant contends that there are no genuine issues of material fact as to Plaintiffs' claim that Defendant's decision to deny their FO loan application was not in accordance with law. As such, Defendant is entitled to summary judgment.

---

[1] Plaintiffs also seemed to concede that the home they proposed to complete with the loan proceeds is not a modest dwelling., stating, in their NAD appeal brief, "[w]hile we would concede the dwelling may not meet FSA's definition of modest in size, cost, and design . . . ." *See* Administrative Record at 223. Plaintiffs also admitted to having "personally invested almost $600,000 in identifiable cost of [their] own capital into this project and community" in an effort to build their "dream house on a farm." *See* Administrative Record at 227.

Respectfully submitted,

TIMOTHY J. HEAPHY
United States Attorney

Dated: July 16, 2014						s/ Kartic Padmanabhan
							Kartic Padmanabhan
							Assistant United States Attorney
							Virginia State Bar No. 74167
							P. O. Box 1709
							Roanoke, VA  24008-1709
							Phone:  (540) 857-2250
							E-mail:  kartic.padmanabhan@usdoj.gov

OF COUNSEL:

Dorian Henriquez-Simons, Attorney
United States Department of Agriculture
Office of Regional Counsel
1718 Peachtree Road
Suite 576
Atlanta, GA   30309

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2014, I filed the foregoing Defendant's Memorandum in Support of Motion for Summary Judgment using the Court's CM/ECF system, and mailed a true and correct copy thereof by the United States Postal Service to the following non-CM/ECF participants:

    Christopher B. Julian
    Renee G. Julian
    474 Orchard View Drive
    Ararat, VA  24053

							/s/ Kartic Padmanabhan
							Kartic Padmanabhan
							Assistant United States Attorney

12