IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER B. JULIAN and RENEE G. JULIAN, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:13-cv-00054 |
| v. | ) ) | **MEMORANDUM OPINION** |
| JAMES RIGNEY, ET AL., | ) ) | By: Hon. Jackson L. Kiser    Senior United States District Judge |
| Defendants. | ) | |

This matter is before the Court on Defendant United States Department of Agriculture's ("USDA") Motion for Summary Judgment. All other defendants were dismissed from this action pursuant to their various motions to dismiss. (See Order, Mar. 24, 2014 [ECF No. 46].) All that remains is a review of the USDA's decision to deny Plaintiffs a Farm Ownership Loan. The matter has been fully briefed by the parties, and both sides were given the opportunity to argue their positions in open court on August 7, 2014. The matter is now ripe for decision. For the reasons stated herein, I will grant Defendant's Motion for Summary Judgment.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]**

On October 10, 2012, Plaintiffs Christopher B. Julian and Renee G. Julian ("Plaintiffs") applied for a Farm Ownership ("FO") loan with the Farm Service Agency ("FSA") of the U.S. Department of Agriculture ("USDA"). (Compl. Ex. A, at 1 [ECF No. 3].) The FSA issued a Notice of Complete Application on November 21, 2012, informing Plaintiffs that their application was deemed complete as of November 19, 2012. (Id. Ex. D, at 3.) On November 28, 2012, FSA issued a letter informing Plaintiffs that their FO loan application was denied. (Id. Ex.

---

[1] A more detailed factual history is set forth in the Memorandum Opinion granting several motions to dismiss. (See Mem. Op., Mar. 24, 2014 [ECF No. 45].)

- 1 -

A.) In the letter, the FSA explained that Plaintiffs' proposed use of loan funds was not authorized for the type of loan requested,[2] and notified Plaintiffs of their rights to appeal. (Id. Ex. A, at 1–3.)

Following an unsuccessful attempt at mediation, Plaintiffs appealed their loan denial to USDA's National Appeals Division ("NAD"). (Id. Exs. Q, AE.) According to the Notice of Appeal, Plaintiffs' request for appeal was complete on March 4, 2013. (Id. Ex. Q, at 1.) During the prehearing held on March 19, 2013, the FSA withdrew one of its justifications (that Plaintiffs were essentially trying to refinance an existing loan) as a reason for the FO loan denial. (Id. at 8; Ex. U, at 2.) As a result, the Hearing Officer informed Plaintiffs that this item would not be allowed as a point of discussion during the hearing. (Id. at 8.) Plaintiffs objected to this restriction in a letter dated March 22, 2013. (Id. Ex. R.) In a letter to Plaintiffs dated March 28, 2013, the Hearing Officer declined to reconsider his ruling on the scope of the hearing, and laid out the core issues to be discussed.[3] (Id. Ex. U, at 2.)

The Hearing Officer conducted an in-person appeal hearing on April 17, 2013, and issued his conclusion that the loan denial was not erroneous on May 16, 2013. (Id. Ex. AE, at 2, 5.) Plaintiffs requested the Director's Review of the NAD determination, and on July 24, 2013, the Director of the National Appeals Division issued his decision. (Id. Ex. AA.)

---

[2] The FSA letter provided three reasons for the denial. First, the FSA alleged that Plaintiffs "requested FO loan funds to pay living expenses via paying ones self for labor," and explained that FO loan funds may only be used to acquire or enlarge a farm, or make a down payment on a farm. (Compl. Ex. A, at 1.) Second, while FO loans may be used to make capital improvements that are "essential to the farming operation," the FSA determined that "improvements completed as you have proposed are not essential," and "exceed what is adequate to meet the family's needs as defined by FSA." (Id.) Finally, the FSA alleged that Plaintiffs requested the loan to "make loan payments," and indicated that "FO loan funds may not be used to make loan payments, i.e., refinance loans." (Id.)

[3] The Hearing Officer identified three (3) core issues on appeal: (1) "Is Appellant's proposal to be paid $70,000 from loan funds an eligible FO expense?" (2) "Is Agency in accordance with the Code of Federal Regulations in denying FO assistance because a dwelling may be more than adequate to meet family needs?" (3) "If so, in this case, is Appellant's dwelling more than adequate to meet their family needs when considering size, cost and design, and thus not eligible for FO assistance?" (Compl. Ex. U, at 2.)

The Director upheld the Appeal Determination on the grounds that the house with the improvements exceeded what is adequate to meet the family's needs, and did not decide whether the improvements were essential to Plaintiffs' farming operation. (Compl. Ex. AA, at 3.) According to the Director, Plaintiffs had requested $172,000 for materials and $128,000 for labor in order to finish construction on a house that they had begun building in 2010. (Id. Ex. AA, at 1–2.) In the Director's Review Determination, he noted:

> Currently, [Plaintiffs'] household consists of three individuals. [Plaintiffs'] house will be 4,600 square feet, with 2,400 square feet on the first level and 2,200 square feet in the basement, plus an attached two-car garage. [Plaintiffs] plan[] to construct a recreation room, a third bedroom, a fitness area, a second master suite, and a winery in the basement. The blueprints for [Plaintiffs'] home also show an 11'6" by 11'6" walk-in closet, a morning porch, two foyers, a deck, and a screened porch on the second floor. Based on this evidence, [Plaintiffs have] not proven that the house adequately meets [the] family's needs and is modest in size, cost, and design.

(Id. Ex. AA, at 3) (internal agency citations omitted). In light of the proposed winery, it is worth noting that Plaintiffs' proposed farm was intended to be a vineyard.

Plaintiffs, proceeding pro se and *in forma pauperis*, filed suit in this Court on September 16, 2013. (Id. at 1.) Plaintiffs named nine (9) defendants, including eight (8) federal agencies or employees and a single state employee. (Id. at 1–3.) I granted Defendants' Motions to Dismiss and dismissed all claims except the claim for review of the agency's decision. (See Mem. Op., Mar. 24, 2014 [ECF No. 45].) The USDA moved for summary judgment on July 16, 2014, and Plaintiffs filed their response on August 4, 2014. The parties appeared for oral argument on August 7, 2014, and the matter is now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC

v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could…lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

This case presents the very limited question of whether the United States Department of Agriculture ("USDA"), by and through its agents at the USDA, acted in accordance with the law when it interpreted the Consolidated Farm and Rural Development Act of 1961 by promulgating regulations, and whether its interpretation and application of the relevant regulations was proper.

- 4 -

It is well-settled that, when a district court is asked to review an agency's regulations, the court is obligated to follow the two-step analysis originally set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under that framework:

> First, [the court] must determine whether the statute directly addresses the precise issue before [it]. "If the intent of Congress is clear, that ends the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Second, if the statute is silent or ambiguous in expressing Congressional intent, [the court] must determine whether the agency's interpretation is based on a "permissible construction of the statute."

Snowa v. C.I.R., 123 F.3d 190, 195−96 (4th Cir. 1997) (quoting Chevron, 467 U.S. at 842−43). This formula is referred to as the Chevron analysis.

Under the authorizing statutes, it is clear that Congress intended to afford the Secretary of Agriculture and the USDA the leeway to interpret and regulate the Farm Ownership ("FO") Loan Program, 7 U.S.C. § 1922 et seq. The statute explicitly states: "The Secretary may make and insure loans under this subchapter to farmers and ranchers . . . subject to the conditions specified in this section." 7 U.S.C. § 1922(a)(1) (2014). Moreover, Congress gave the Secretary explicit authority to define relevant terms necessary for the implementation of the program. See, e.g., id. (" . . . a family farm, as defined by the Secretary . . . ."). Thus, it is clear that Congress intended for the Secretary to fill in the gaps in the law, so long as the Secretary's regulations did not conflict with the clear meaning of the statute.

When reviewing an Agency's action under the Chevron analysis, the court must first determine whether the statute directly addresses the relevant question. Here, the question is whether a farm loan may be used for the type and extent of renovations Plaintiffs requested. As relates to the present case, the statute clearly permits a farmer to "use a direct loan . . . ***only for*** . . . making capital improvements to a farm or ranch . . . ." Id. § 1923(a)(1)(B). Thus, it is clear

that the statute addresses, at least generically, the question presented. The statute is not, however, "unambiguously clear" on Congress's intent as to *what* is meant by "capital improvements." Under Chevron, because the statute is silent on the definition of "capital improvements," the court must turn to the Agency's regulations to determine if they are a reasonable extension of Congress' intent. See Snowa, 123 F.3d at 195–96.

For the second step of the Chevron analysis, I must decide whether the Agency's "interpretation is based on a 'permissible construction of the statute.'" Id. The relevant regulations state that FO loans "may only be used to . . . [m]ake capital improvements to a farm owned by the applicant, for construction, purchase or improvement of farm dwellings, service buildings or other facilities and improvements essential to the farming operation." 7 C.F.R. § 764.151(b) (2014). The USDA Farm Service Agency's ("FSA") handbook offers the following guidance on "capital improvements" and directly references 7 C.F.R. § 764.151(b):

> FO funds can be used to purchase, improve, or build any type of structure, including a dwelling that either [*sic*] adequately meets family needs and [*sic*] is modest in size, cost, and design, provided the structure is related to the farming enterprise. The dwelling shall be located on the farm when FO funds are used to purchase the dwelling. However, if the applicant already owns a dwelling located close to the farm, FO funds may be used to repair or improve the dwelling.

FSA Handbook 3-FLP (Rev. 2) Amend. 4, ¶ 131C (Oct. 20, 2011) (hereinafter "FSA Handbook"). In its decision regarding Plaintiff's requested loan, the FSA cited this section as its basis to deny Plaintiffs' application. In its original denial letter, the FSA Farm Loan Manager stated that "funds can be used to build a dwelling on the farm that adequately meets the family's needs and is modest in size, cost and design. The improvements completed as you proposed are not essential to the farming operation. The improvements exceed what is adequate to meet the

- 6 -

family's needs as defined by FSA." (Compl. Ex. A, pg. 1 [ECF No. 3-1].) On internal appeal, that decision was upheld. (See id. Ex. AE, pg. 4 [ECF No. 3-31].)

Here, considering that Congress' intention in establishing the Farm Ownership Loan Program was "to aid the 'underprivileged' farmer," Curry v. Block, 541 F. Supp. 506, 511 (S.D. Ga. 1982), there can be little doubt that limiting the funds to only those dwellings which are modest in size, cost and design, and/or homes that "adequately meet[] the family's needs" is consonant with that purpose. Thus, under Chevron, the Court should afford "substantial deference" and "considerable weight" to the Agency's interpretation and promulgated regulations. Pashby v. Delia, 709 F.3d 307, 338 (4th Cir. 2013) (quoting Chevron, 467 U.S. at 844).

The closest Plaintiffs come to making a counter-argument to Defendant's position is their statement that "Defendants ask the court for deference in interpretation of an interpretation of a statute that is itself so poorly written as to be a violation of Due Process all its own." (Pls.' Resp. in Opp. to Def.'s Mot. for Summ. J., pg. 9, Aug. 4, 2014 [ECF No. 73] (hereinafter "Pls.' Resp.").) Plaintiffs believe that the FSA Handbook is so ambiguously worded that it is unenforceable. See FSA Handbook ¶ 131C ("FO funds can be used to purchase, improve, or build any type of structure, including a dwelling that either [*sic*] adequately meets family needs and [*sic*] is modest in size, cost, and design, provided the structure is related to the farming enterprise."). While there is some ambiguity as a result of the mismatched "either/and," I am able to dispense with Plaintiffs' case without relying on the Handbook language. The applicable regulations state that FO funds may *only* be used on "improvements ***essential to the farming operation***." 7 C.F.R. § 764.151(b) (emphasis added). No one disputes that Plaintiffs sought funds to finish a home that included: two master bedroom suites; a fitness area; a recreation

- 7 -

Case 4:13-cv-00054-JLK-RSB  Document 78  Filed 08/15/14  Page 7 of 11  Pageid#: 1078

room; an "in-law" suite; a morning porch; two foyers; and a wine cellar in the basement. (See Compl. Ex. AA pg. 3 [ECF No. 3-27].) The home in question would be over 4,600 square feet in size, and Plaintiffs have openly referred to the completed structure as their "dream house." (See id.; R. at 227.) Even without relying on the FSA Handbook, there can be no serious contention that a home of the size and amenities proposed by Plaintiffs is "essential to the farming operations" of a three-member family. (See Compl. Ex. AA pg. 3.) Thus, even without relying on the admittedly confusing[4] Handbook provision, the Agency's decision comports with the applicable regulations, which are entitled to appropriate deference under Chevron.

Moreover, Plaintiffs' position regarding interpretation of the relevant passage of the Handbook advocates a strained reading of the applicable section. Plaintiffs contend that the final line of paragraph 131C of the Handbook is, in essence, separate from the preceding requirements:

> FO funds can be used to purchase, improve, or build any type of structure, including a dwelling that either [*sic*] adequately meets family needs and [*sic*] is modest in size, cost, and design, provided the structure is related to the farming enterprise. The dwelling shall be located on the farm when FO funds are used to purchase the dwelling. However, if the applicant already owns a dwelling located close to the farm, FO funds may be used to repair or improve the dwelling.

---

[4] Although the Handbook is confusing, it is not so ambiguous as to render it unenforceable. Rather than step into the morass of what version the Agency meant (either/or vs. both/and) and what it is reasonable for Plaintiffs to understand, because the question presented is easily answered by reference to the regulations only, it seems prudent to leave the question of the Handbook's interpretation to the case where it is dispositive.

    It is worth pointing out that Plaintiffs are correct that "agency manuals" are not entitled to the same Chevron deference as agency regulations. They are, however, entitled to *some* consideration. "Chevron did nothing to eliminate Skidmore [v. Swift & Co.]'s holding that an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." United States v. Mead Corp., 533 U.S. 218, 234 (2001). Nevertheless, because the regulation covers the question presented, there is no need to review the Handbook provision, even under this lower standard.

- 8 -

FSA Handbook ¶ 131C. Plaintiffs contend that "the *guideline* [regarding modest in size, cost, and design] was not intended to be applicable to [i]mprovements and this is evidenced by the last sentence . . . . This statement, the last in the rule, reflects no requirement that improvements to existing dwellings, requires the dwellings to be modest in size cost and design." (Pls.' Resp., pg. 5.)

Plaintiffs' proposed construction would set aside generic rules of construction and comprehension. Their proposed reading essentially divorces sentence one of the paragraph from sentence three, meaning that sentences of the same paragraph have no continuity of purpose or interpretation. This is simply not the case. The only fair reading of the paragraph is that it permits funds to be used to purchase or improve any structure that is located on the farm. It also permits funds to be used to improve or repair a dwelling that is near the farm, provided the dwelling meets the other limitations.

Plaintiffs actually argue against themselves on this point. They contend that the limitations on the dwelling do not apply to dwellings that are merely *near* the farm. They also vehemently point out, however, that "Plaintiffs [*sic*] dwelling is, was, and always has been on the farm . . . ." (Pls.' Resp. pg. 5.) Thus, even if Plaintiffs interpretation was reasonable (and it is not), by their own admission it would not apply to their case; their home is *on* the farm, not merely *near* it.

Insofar as Plaintiffs argue that the "modest" limitation does not apply to improvements to existing dwellings on the farm, the plain language of the Handbook belies such an interpretation. See FSA Handbook ¶ 131C ("FO funds can be used to . . . improve . . . a dwelling that either [*sic*] adequately meets family needs and [*sic*] is modest in size, cost, and design, provided the structure is related to the farming enterprise."). To conclude as Plaintiffs do would require

clauses within the same sentence to be read completely in isolation. No rule of statutory construction would support such a reading.

Because the regulations promulgated by the USDA are permissible and enforceable under Chevron, the final question is whether the Agency's implementation of the regulations in Plaintiffs' case was arbitrary or not in accordance with the law. Plaintiffs were afforded multiple opportunities to be heard and to argue their position to the USDA. Moreover, they have tacitly admitted that their proposed home does not meet the Agency's regulation regarding its size, scope, and design. (See R. at 223 [ECF No. 50-6] ("[W]e would concede the dwelling may not meet FSA'a definition of modest in size, cost, and cost . . . ."); R. at 227 [ECF No. 50-7] (noting that Plaintiffs invested over $600,000.00 of their own funds into the project, and that they were attempting to build their "dream house on a farm").) Despite Plaintiffs' protestations, there can be little doubt that the proposed structure runs afoul of the Agency's valid and enforceable regulations. I cannot say that the Agency's decision to deny Plaintiffs the FO Loan was arbitrary or not in accordance with the law. For this reason, Defendant is entitled to summary judgment.

## CONCLUSION

The Agency's regulations with regard to administration of the Farm Ownership Loan Program are a reasonable interpretation of the statute and are entitled to substantial deference. In applying the regulations to Plaintiffs' loan application, the Agency reasonably applied the regulations, and its decision was not arbitrary, capricious, or not in accordance with the law. For this reason, the Agency's determination should be upheld and Defendant's Motion for Summary Judgment will be granted.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Plaintiffs and all counsel of record.

Entered this 15th day of August, 2014.

                                        s/Jackson L. Kiser
                                        SENIOR UNITED STATES DISTRICT JUDGE